# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01423-SCT

*ESWORLALLSING JUNDOOSING a/k/a ZANDU JUNDOOSING*

*v.*

*SHEILA JUNDOOSING*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/22/2001 |
| TRIAL JUDGE: | HON. JOHN C. ROSS, JR. |
| COURT FROM WHICH APPEALED: | PRENTISS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | SIDNEY FRANKLIN BECK, JR. |
| ATTORNEY FOR APPELLEE: | JOHN ANDREW HATCHER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 9/12/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/3/2002 |

**BEFORE McRAE, P.J., AND EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. Esworlallsing Jundoosing, also known as Zandu Jundoosing ("Zandu"), appeals from the final judgment of divorce entered by the Chancery Court of Prentiss County, Mississippi, awarding Sheila Jundoosing ("Sheila") a divorce and custody of the couple's four children. Zandu raises two salient issues: first, that the chancery court did not have jurisdiction of the parties and of the subject matter and secondly, that full faith and credit should have been given to a California judgment regarding divorce and custody. Finding no reversible error, we affirm.

## FACTS AND PROCEEDINGS BELOW

¶2. Sheila filed a complaint for divorce on April 11, 2001 against her husband. The grounds for divorce were habitual cruel and inhuman treatment, habitual drunkenness and irreconcilable differences. The couple was married on May 27, 1989, in Greenwood, Mississippi and resided there for approximately a year and a half. They then moved to the State of California, where they lived until September of 2000. However, through the years, they moved back and forth between California and Mississippi.

¶3. Sheila and Zandu were married for almost twelve years, during which four children were born: Zandu Jundoosing, Jr., born April 7, 1990 in New Orleans, Louisiana; Calvin Ramiz Jundoosing, born December

3, 1991 in Greenwood, Mississippi; BeeJay Jundoosing born June 25, 1993 in Pasadena, California; and Dillon Jundoosing, born October 25, 1994 in Riverside, California. Sheila asserts that in September of 2000 the family moved back to Mississippi into her mother and step-father's home. Shortly thereafter, on September 29, 2000, Zandu decided to move back to California, leaving behind Sheila and the children. However, Zandu left with no indication that there was a problem between Shelia and him and began to write letters and send money that indicated the family was currently establishing Mississippi as their home state. Sheila obtained employment in the state. Sheila also took the children to the Health Department of Prentiss County, Mississippi, to get their shots, so that she could register them for school in Prentiss County. Additionally, because of dire financial circumstances, Sheila had to seek food stamps and was eventually approved for Medicaid assistance in October 2000. She also enrolled the children in school in October 2000. Sheila filed a 2001 State of Mississippi income tax return showing she was a resident of Prentiss County, Mississippi. She claimed all four children as dependents on that tax return. Sheila also moved out of her parents' home to an apartment in Booneville, Mississippi. Sheila lived in Prentiss County for more than six months before the filing of this divorce action.

¶4. Beginning in 2001, the chancellor made three separate rulings and findings regarding jurisdiction of Zandu and Sheila Jundoosing and their children. The chancellor, in his first opinion, entered a temporary judgment on May 11, 2001, determining that an emergency existed regarding the custody of the children, and awarding them to Sheila. At this point, Zandu filed a motion to dismiss.

¶5. On July 11, 2001, the chancellor heard oral argument and testimony on the motion to dismiss. Further, on August 3, 2001, in a second opinion the chancellor found based on clear and convincing evidence that the court had jurisdiction of all the actual and necessary parties and of the subject matter and fully considered the requirements of the Uniform Child Custody Jurisdiction Act, Miss. Code Ann. §§ 93-23-1 to -47 (1994).

¶6. Lastly, on renewal of the motion to dismiss ore tenus by Zandu, the chancery court heard, on the merits, the divorce case on August 22, 2001, granted the divorce, gave Sheila custody of the children, denied the motion to dismiss on subject matter jurisdiction, and incorporated the terms of its previously rendered opinion and judgment regarding the motion to dismiss. Thereafter, Zandu filed an appeal on August 31, 2001, contending that the Superior Court of California, County of Los Angeles, had jurisdiction of the parties.

¶7. When Sheila filed for divorce, Zandu asserted that he had previously filed for a divorce in California. Because Sheila did not appear to defend herself at trial, a temporary order was granted requiring her to bring the children back to the State of California. Sheila denied having any knowledge of such a case, except the fact that she was served a summons on March 21, 2001, which had a return date of November 8, 2000.

¶8. In his amended complaint in the California action, Zandu asserted that he did not know why Sheila and the children were in Mississippi. However, in his original complaint he acknowledged that he took Sheila and the children to Mississippi, and there is a letter from Zandu indicating his appreciation of the help by Sheila's parents help in establishing the family residency in the State of Mississippi.

¶9. Lastly, the motion to dismiss filed by Zandu had unsigned, unsworn and uncertified copies of documents purportedly from the California court which enclosed temporary orders which were entered with no notice to Sheila. The chancery court decided that this was inadequate notice, that there was not a final California

judgment, and that Sheila and the four children of the parties were residents of Prentiss County, Mississippi.

## STANDARD OF REVIEW

¶10. In domestic relations cases the scope of review is limited by the substantial evidence/manifest error rule. ***Magee v. Magee,*** 661 So.2d 1117, 1122 (Miss. 1995). This Court may reverse a chancellor's findings of fact only when there is no "substantial credible evidence in the record" to justify his finding. *[Henderson v. Henderson,](#)* 757 So.2d 285, 289 (Miss. 2000). "Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." ***Johnson v. Johnson,*** 650 So.2d 128, 1285 (Miss. 1994), citing ***McEwen v. McEwen,*** 631 So.2d 821, 823 (Miss. 1994).

## DISCUSSION

**I. Whether the Chancery Court of Prentiss County, Mississippi, had jurisdiction of the subject matter pursuant to Miss. Code Ann. § 93-23-5 of the Uniform Child Custody Jurisdiction Act.**

¶11. Zandu alleges that the chancellor failed to apply the statutory guidelines set out in Miss. Code Ann. § 93-23-5 (1994) of the Uniform Child Custody Jurisdiction Act (UCCJA) when determining whether the Chancery Court of Prentiss County, Mississippi, had jurisdiction of the subject matter. However, Miss. Code Ann. § 93-23-5(1) states that a court of this state, which is competent to decide child custody matters, has jurisdiction to make a child custody determination by initial or modification decree if:

> (a) This state (i) is the home state of the child at the time of commencement of proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as a parent continues to live in this state; or

> (b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents or the child and at least one contestant has a significant connection with the state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships . . . .

¶12. In addressing Zandu's motion to dismiss, the chancellor determined that the statutory guidelines set forth by the UCCJA were in fact met by clear and convincing evidence to support the finding that the Chancery Court of Prentiss County, Mississippi, had subject matter jurisdiction. His decision was based on these facts: Sheila (a) had been born in Mississippi and lived there until the age of eighteen, (b) met and married Zandu in Mississippi and continued to live there for a year, (c) had moved back and forth to the state any number of times, but (d) more recently, had returned to Mississippi where she found a job, a place to live, enrolled the children in school, began receiving Medicaid assistance and filed her taxes for 2001. These facts constituted such clear and convincing evidence as to validate the chancellor's finding that the State of Mississippi was the children's home state. The chancellor further stated that:

> There is available in this State substantial evidence concerning the children's present or future care, protection, training and personal relationships, as each of the children have been enrolled in school here, in Prentiss County, Mississippi, have received protection, training, and a personal relationship

with their Mother, Grandmother and family.

We find that these facts provide substantial evidence for determining the children's home state and their best interest, in accordance with the guidelines set under Miss. Code Ann. § 93-23-5(1)(b), and we agree that all criteria set out in the UCCJA have been met.

¶13. In considering whether a chancery court should proceed in a child custody matter, we have held that the chancellor must undertake a three-step process:

> A court must first determine if it has authority, or jurisdiction, to act following the guidelines of § 93-23-5. If a court determines that it does not have jurisdiction the process stops there. However, if that hurdle is cleared, a determination is made as to which court is the most appropriate or convenient forum. If the court accepts jurisdiction as the more convenient the court must determine if the action to be taken is foreclosed by an order or judgement by the other state court.

*In re Z.J.,* 804 So. 2d 1009, 1016 (Miss. 2002).

¶14. Since jurisdiction has been established, we now move onto the remaining two steps of the three-step test. Hence, we must now determine if the Mississippi court is the more convenient forum. Miss. Code Ann. § 93-23-13 (1994) states in pertinent part:

> (3) In determining if it is an inconvenient forum the Court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, *among others*:
>
> (a) If another state is or recently was the child's home state;
>
> (b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
>
> (c) If substantial evidence concerning the child's present or future care, protection and training, and personal relationships that are more readily available in another state;
>
> (d) If the parties have agreed on another forum, which is no less appropriate; and
>
> (e) If the exercise of jurisdiction by a court of this state would contravene any of the provisions of this chapter.

¶15. Under this second prong, Zandu only argues that Mississippi is an inconvenient state, since he deems California to be the family's "home state." Zandu further asserts that the children were only in Mississippi because Sheila "brought" them to the state without his knowledge. This assertion is belied by Zandu's original motion in which he admitted that he and Sheila brought the children to Mississippi together. Furthermore, it was Zandu who abandoned the children in Mississippi, when he chose to move back to California. Zandu's argument that Mississippi is an inconvenient forum is also questionable in light of a letter he wrote to Sheila. The letter states in pertinent part:

> But as you are taking care of yourselves & the kids as count for me, I have always want us to be in progress for the family unit.

I borrow three hundred from the Frederick. I am going to pick up your cheque and give them as guarantee.

Thanks to Hershel and Grandma for everything they are doing for *us*.

(emphasis added).

¶16. The letter further suggests that he did have knowledge of his family's residency in Mississippi. He made arrangements to assist them financially, and he even expressed gratitude for the help Sheila was receiving for their family. These actions establish that Zandu was not only aware of his family's Mississippi residency, but was also not opposed to it.

¶17. The third step to this process is to determine if another court has rendered a final judgment which in essence would bar the Mississippi court from assuming jurisdiction. In particular, Zandu relies upon the temporary orders rendered in the Superior Court of California, County of Los Angeles, as its basis for jurisdiction under the provisions of Miss. Code Ann. § 93-23-11(1) (1994) and § 93-23-5(d)(i); thereby claiming that California usurped Mississippi's jurisdiction. This simply is not true. We have addressed this issue and held that:

> Merely filing a petition does not mean a Court has "assumed jurisdiction." Miss. Code Ann. § 93-23-11. Ordinarily, there must be some order of the Court indicating it has assumed jurisdiction following the filing of a pleading.

*Hobbs v. Hobbs*, 508 So.2d 677, 680 (Miss.1978).

¶18. Here, the California court issued temporary orders with no summons served until months after the hearing. Additionally, the California petition was not signed, nor sworn to by Zandu. Clearly, the chancellor did not err in finding that this was inadequate notice. Further, the chancery court under these factors was correct in finding that it could assume jurisdiction because the California court had not properly assumed jurisdiction over the parties.

## II. Whether the chancellor erred in not following the statutes as to granting full faith and credit to the court in California.

¶19. Zandu argues that the chancellor erred by not granting full faith and credit to the court in California. He directs this Court's attention to *In re Jackson,* 562 So.2d 1271 (Miss. 1990) in support of this argument. There the parties both married and divorced in the State of Indiana. There was no dispute as to the State of Indiana being the "home-state." After the divorce, the mother and child moved to Mississippi, and the father subsequently filed for child custody modification in the State of Indiana. Of course, this Court held that the Indiana judgment should have been given full faith and credit, because there was a final judgment and there existed comity since the Indiana court complied with the Uniform Child Custody Jurisdiction Act.

¶20. *In re Jackson* is unlike the case sub judice. Here, the home-state was determined to be the State of Mississippi, and there was no final judgment in the California court. In addition, the notice in the California case was improper or inadequate at best. Further, this Court has held that the application of comity rests in the discretion of the trial judge. *Laskosky v. Laskosky,* 504 So.2d 726, 729 (Miss. 1987).

¶21. In summary, we affirm the chancellor's decision that, since the California court was not in compliance

with the statutory guidelines of the UCCJA, the California judgment was invalid and, therefore, not entitled to full faith and credit.

## CONCLUSION

¶22. We find that the chancellor did not err in assuming jurisdiction over the child custody dispute between Zandu and Sheila Jundoosing and accordingly has met the guidelines set forth in Miss. Code Ann. § 93-23-5 (1994) of the Uniform Child Custody Jurisdiction Act. Thus, the record also justifies not granting full faith and credit to the judgment of the Superior Court of California. As such, the chancellor was correct in awarding custody of the four children to Sheila Jundoosing. Therefore, since Zandu's arguments are without merit, the chancery court's judgment is affirmed.

¶23. **AFFIRMED.**

    **PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR.**