841 So.2d 1195 (2003)
John MARR, Jr., Appellant
v.
Darnay Marr ADAIR, Appellee.
No. 2001-CA-01723-COA.
Court of Appeals of Mississippi.
April 8, 2003.
*1196 Kelly Michael Rayburn, for appellant.
Darnay Marr Adair (pro se), appellee.
EN BANC.
IRVING, J., FOR THE COURT:
¶ 1. John Marr appeals from a judgment of the Harrison County Chancery Court relinquishing the jurisdiction which it had assumed over child custody and support matters emanating from a Louisiana judgment *1197 of divorce. John argues in his appeal that the chancery court erred when it relinquished jurisdiction and vacated previously-entered orders relating to matters of custody. John also argues that the chancery court erred in dismissing several of his motions dealing with issues of contempt and custody due to Darnay's failure to comply with prior orders of the court. John argues further that the chancery court erred in finding that, under the Uniform Child Custody Jurisdictional Act, the State of Louisiana was the more appropriate forum to consider the issues regarding custody of the minor children.

FACTS
¶ 2. John and Darnay Marr Adair were divorced on March 8, 1996, by a judgment of the 22nd Judicial District Court of St. Tammany Parish, Louisiana. The court ordered John to pay Darnay $400 per month in child support. Pursuant to a joint stipulation, both parents received joint custody of their three children, Kristina, Kayla, and Christopher, with primary custody being awarded to Darnay. Approximately three years after the parties' divorce, John, now a resident of Mississippi, filed a motion for contempt and custody and a motion to enroll the Louisiana judgment in the Chancery Court of Harrison County, Mississippi. The motions alleged that Darnay was denying John visitation with his children, as well as violating other provisions of the Louisiana judgment of divorce. John further claimed that the children were neglected in the care of their mother and living in an unstable environment. At the time these motions were filed, Darnay had relocated to Texas.
¶ 3. On March 22, 1999, the chancery court determined that it did not have jurisdiction over the custody matters involved, presumably because the children did not reside in Mississippi at the time. A ruling was issued from the bench; however, no written order was entered.
¶ 4. On January 10, 2000, John and Darnay executed a document entitled "Consent Judgment" whereby they agreed to share joint legal custody of the three minor children, with John having primary custody of the two girls, Kristina and Kayla, and Darnay retaining custody of Christopher. Although the document is styled as a Consent Judgment of the 22nd Judicial District Court of St. Tammany Parish, Louisiana, it was not signed by a judge, nor was it filed of record with that court. It appears, however, that John assumed custody of the two girls pursuant to this agreement and brought them to Mississippi.
¶ 5. On September 1, 2000, after Kristina and Kayla had lived with him in Mississippi for approximately eight months, John again petitioned the Harrison County Chancery Court to enroll the Louisiana judgment and to ask the Louisiana trial court to release its jurisdiction over the case. Although custody was a part of the relief requested, John did not file until August 31, 2001, the affidavit required by Mississippi Code Annotated section 93-23-17 (Rev.1994). Also, on September 1, 2000, John filed a petition for an ex parte temporary restraining order seeking custody and asking that Darnay be enjoined from coming within 500 yards of him, his wife, or the girls. The court granted John temporary custody of the minor children, and Darnay was enjoined from contacting them pending further order from the chancery court.
¶ 6. On September 13, 2000, Darnay, proceeding pro se, filed motions with the chancery court opposing the enrollment of the Louisiana judgment in Mississippi, challenging the restraining order, and contesting the court's jurisdiction.
*1198 ¶ 7. After the filing of Darnay's motions and responses to John's motions, the chancery court, on September 13, 2000, proceeded to hear the pending motions. However, during the hearing, the parties reached a settlement which essentially reflected the terms and provisions of the "Consent Judgment" that they had executed in January of 2000. The settlement agreement gave custody of Kristina and Kayla to John and custody of Christopher to Darnay. The parties further agreed that the Harrison County Chancery Court had jurisdiction over the parties and subject matter involved. The terms of the settlement agreement were read into the record on the date of the hearing, and both John and Darnay verbally acknowledged that the agreement read in open court accurately reflected the terms and conditions of the settlement agreement reached by them. However, the judgment encompassing the terms and conditions of the settlement agreement was not entered until February 19, 2001. Neither John nor Darnay signed the judgment.
¶ 8. On February 20, 2001, John filed a motion for contempt alleging that Darnay had taken the girls for weekend visitation and refused to return them. A hearing was held on March 7, 2001, and based on evidence adduced at the hearing, the court entered an order awarding temporary custody of Kristina and Kayla to the Harrison County Youth Court/Shelter. John, as the girls' primary custodian, was directed to make appointments for them to receive counseling through the Gulf Coast Mental Health Center.
¶ 9. On March 15, 2001, the chancery court entered an order finding Darnay in contempt of the court's February 19, 2001 judgment for failing to return the children to John following visitation. She was sentenced to six months' incarceration, suspended, and ordered to pay attorney's fees.
¶ 10. On March 30, 2001, Darnay filed a motion to set aside the court's March 15, 2001 contempt order. She also sought an order of dismissal of the case, along with an order setting aside all previous orders on the basis that Harrison County Chancery Court lacked jurisdiction over the ongoing custody dispute between the parties. At this point, Darnay had retained the services of an attorney.
¶ 11. On April 4, 2001, the court entered an order releasing Kristina and Kayla from the care of the youth shelter to the temporary custody of Darnay. On August 3, 2001, John filed another motion for contempt, a petition for an ex parte injunction and a temporary restraining order. On August 9, 2001, John filed a motion seeking a modification of the court's April 4, 2001 order which granted temporary custody to Darnay.
¶ 12. Sensing a possibility of conflicting jurisdiction, the chancery court contacted the 22nd Judicial District Court of St. Tammany, Louisiana, to inquire as to the existence of any proceedings pending in that court. It was discovered that all the while the Mississippi chancery court had proceeded, a Louisiana district attorney had been pursuing a non-payment action against John in Louisiana for failure to pay child support. That action had commenced on July 21, 1999, and was set for hearing in November of 2001. It was also discovered that a motion by John contesting the Louisiana court's jurisdiction was also pending in the Louisiana court while proceedings were moving forward in the Mississippi chancery court.
¶ 13. On October 2, 2001, the Harrison County Chancery Court entered an order setting aside all previously-entered orders on the basis that it lacked jurisdiction over the ongoing custody dispute between the *1199 parties. Excepted from this vacation of orders was the chancery court's March 15, 2001 order of contempt against Darnay. The chancery court also found that it would be capable of exercising jurisdiction over the parties' custody dispute consistent with the jurisdictional provisions of the Uniform Child Custody Jurisdictional Act (UCCJA) and the Parental Kidnapping Prevention Act (KPA). However, the chancery court expressed concern over John's failure to timely file a UCCJA affidavit and the effect of that omission on the court's power to assert jurisdiction over the case. The court further enunciated that it could not find that Darnay waived the UCCJA affidavit requirement. Moreover, it acknowledged that Louisiana was the more convenient forum in which to hear the parties' custody dispute. Nevertheless, the chancery court saw fit to allow its March 15, 2001 order finding Darnay in contempt of court to stand.

STANDARD OF REVIEW
¶ 14. In domestic relations cases, our scope of review is limited by the substantial evidence/manifest error rule. Jundoosing v. Jundoosing, 826 So.2d 85, 88(¶ 10) (Miss.2002) (citing Magee v. Magee, 661 So.2d 1117, 1122 (Miss.1995)). This Court may reverse a chancellor's findings of fact only when there is no "substantial credible evidence in the record" to justify his finding. Id. (citing Henderson v. Henderson, 757 So.2d 285, 289(¶ 19) (Miss.2000)). "Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or unless the chancellor applied an erroneous legal standard." Id. (citing Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss. 1994)).

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 15. The core issue raised by John is whether the chancery court acted properly in relinquishing jurisdiction of the Louisiana domestic relations judgment after initially assuming jurisdiction and deciding attendant issues of custody and support. Therefore, we combine his two issues in a singular discussion.
A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state (i) is the home state of the child at the time of commencement of proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as a parent continues to live in this state; or
(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents or the child and at least one contestant has a significant connection with the state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships....
Miss.Code Ann. § 93-23-5(1) (Rev.1994).
¶ 16. In deciding whether it should proceed in a child custody matter under the UCCJA, the chancery court must undertake a three-step process:
A court must first determine if it has authority, or jurisdiction, to act following the guidelines of § 93-23-5. If a court determines that it does not have jurisdiction, the process stops there. However, *1200 if that hurdle is cleared, a determination is made as to which court is the most appropriate or convenient forum. If the court accepts jurisdiction as the more convenient, the court must determine if the action to be taken is foreclosed by an order or judgment by the other state court.
Jundoosing, 826 So.2d at 89(¶ 13) (citing In re Z.J., 804 So.2d 1009, 1016(¶ 19) (Miss.2002)).
¶ 17. As previously noted, the chancery court in effect concluded that the filing of the affidavit required by Mississippi Code Annotated section 93-23-17 was indispensable to its jurisdiction. The relevant section of this statute requires that:
(1) Every party in a custody proceeding, in his first pleading or in an affidavit attached to that pleading, shall give information under oath as to the child's present address, the places where the child has lived within the last five (5) years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall further declare under oath whether:
(a) He has participated (as a party, witness or in any other capacity), in any other litigation concerning the custody of the same child in this or any other state;
(b) He has information of any custody proceeding concerning the child pending in a court of this or any other state; and
(c) He knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child.
Miss.Code Ann. § 93-23-17 (Rev.1994).
¶ 18. It is undisputed that John failed to include the required information in his first pleading or in an affidavit attached to the pleading. Darnay argues that this failure to timely file the information with the initial motion prevented the chancery court from exercising jurisdiction to determine custody of the parties' children. John counters that, while his first pleading did not contain all of the information required to be disclosed by section 93-23-17, the relevant information was known to Darnay at the time of John's initial filing. According to John, this fact is borne out by the affidavit which Darnay attached to her motion to set aside the chancery court's judgment.
¶ 19. We have examined Darnay's affidavit, which was filed on March 30, 2001, and agree with John that it does contain all of the relevant information required by Mississippi Code Annotated section 93-23-17 (Rev.1994). Moreover, it is undisputed that John filed a UCCJA affidavit in this cause on August 31, 2001.
¶ 20. According to Darnay's affidavit, the minor children lived in Mississippi with their father from January 20, 2000, to February 2001, although Darnay claims that John's custody of the children was against her will during the period from May 20, 2000 until February 2001. However, this allegation belies the oral agreement which Darnay made in open court on September 13, 2000, as well as the never-filed consent judgment executed by Darnay on January 10, 2000. In the consent judgment that was not filed in the Louisiana court, Darnay agreed that John would have custody of the parties' two girls. In the oral agreement which Darnay entered into in the Harrison County Chancery Court, she also agreed that John would have paramount physical custody of the parties' two daughters.
¶ 21. The initial question then is whether the Harrison County Chancery Court *1201 properly assumed jurisdiction in light of (1) the fact that the minor children had lived continuously in Mississippi from January 2000 until February 9, 2001, (2) Darnay's September 13, 2000 agreement that the Harrison County Chancery Court had jurisdiction over the parties and subject matter, (3) Darnay's March 30, 2001 affidavit which satisfied the UCCJA's informational requirements for initial custody pleadings, and (4) John's August 31, 2001 affidavit which also satisfied the UCCJA's informational requirements. If the answer to the initial question is in the affirmative, then the follow-up and ultimate question is whether the chancery court properly relinquished jurisdiction. As already observed, the chancery court determined that the timely filing of the UCCJA affidavit was jurisdictional and that the State of Louisiana was a more convenient forum for determining the custody dispute.
¶ 22. The issue we face here has not been addressed by the Mississippi Supreme Court. However, in Robison v. Lanford, 822 So.2d 1034, 1041 (¶¶ 31-32) (Miss.Ct.App.2002), this Court addressed the issue and held that because the appellant failed to object at the chancery court level to the non-disclosure of the information required by section 93-23-17, he had waived the issue, at least in the absence of a showing of existing proceedings in another jurisdiction that the chancellor needed to consider.[1]
¶ 23. Courts which have addressed the issue in other jurisdictions are divided. Having no precedence to follow in our state, we consider the case law of other states. Two out-of-state cases construing the UCCJA disclosure requirements provide some guidance, although not the answer to the specific issue before us. The first case, Breaux v. Mays, 746 P.2d 708 (Okla.Ct.App.1987), overruled on other grounds by G.S. v. Ewing, 786 P.2d 65 (Okla.1990), held that a petitioning party's failure to initially provide the chancery court with the disclosure information required by the UCCJA, either by pleading or affidavit, was not jurisdictional but rather was merely procedural and that the initial failure to provide the information could be cured by amendment. The second case, Cook v. Court of Common Pleas of Marion County, 28 Ohio App.3d 82, 502 N.E.2d 245 (1986), held that the UCCJA affidavit is a jurisdictional requirement in a child custody proceeding but that the requirement that it be filed with the complaint is considered directory, not mandatory.
¶ 24. It may be concluded from the above cases that timely compliance with the UCCJA disclosure provision upon filing the initial complaint is essential to facilitate a proper determination of the court's jurisdiction but that failure to do so will not necessarily impair the court's exercise of jurisdiction if appropriately cured by a timely amendment. Thus, a court may nevertheless validly exercise its jurisdiction if the omitted information is timely supplied by amendment of the pleading or by affidavit annexed to a motion to amend.
¶ 25. Here, the record indicates, as we have already observed, that John did not file the necessary disclosures with his initial pleadings. However, he subsequently filed a UCCJA affidavit with all pertinent information on August 31, 2001. The information which he disclosed, as well as the information obtained by the chancellor from the 22nd Judicial District Court of St. Tammany, Louisiana, revealed no pending litigation in any other state concerning *1202 custody of the minor children, even though there was on-going litigation in Louisiana concerning back child support.
¶ 26. We find that based on the specific facts of this case, the Harrison County Chancery Court acted properly in assuming jurisdiction and erred in ultimately concluding that it lacked jurisdiction because of John's failure to attach by affidavit, or include in his initial pleading, the information required by Mississippi Code Annotated section 93-23-17 (Rev. 1994). This information had been provided by John approximately two months prior to the order of dismissal. While it is true that the Louisiana court, as the court issuing the original judgment, would normally have continuing jurisdiction to modify its judgment, we note that Darnay did not reside continually in Louisiana following the grant of the divorce. She moved to and resided in the State of Texas for a period of time, although it is unclear from the record as to how long she remained a resident of that state. John and the two girls had lived in Mississippi for approximately eight months prior to the enrollment of the Louisiana judgment and approximately fifteen months prior to the court's transferring custody of the girls to Darnay who had relocated to the State of Louisiana.
¶ 27. We next consider whether the chancery court erred in determining that Louisiana was a more appropriate forum to resolve the custody matters. In reaching this determination, the chancery court stated:
Although the children in question lived in Mississippi for a little over one year, they have spent the majority of their lives in Louisiana. They are presently residing in Louisiana with their mother. They are enrolled in school in Louisiana. The majority of the evidence necessary for a custody determination lies in Louisiana. There is a child support action pending in Louisiana and scheduled for hearing in just over a month's time.
¶ 28. The UCCJA allows a court competent to decide child custody matters to decline to exercise its jurisdiction if it finds that it is an inconvenient forum and that the court of another state is more appropriate. The applicable statutory provision reads as follows:
(1) A court which has jurisdiction under [the UCCJA] to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
(2) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.
(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(a) If another state is or recently was the child's home state;
(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
(c) If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;
*1203 (d) If the parties have agreed on another forum which is no less appropriate; and
(e) If the exercise of jurisdiction by a court of this state would contravene any of the provisions of this chapter.
Miss.Code Ann. § 93-23-13 (Rev.1994).
¶ 29. We first observe that the chancery court's order granting Darnay's motion to dismiss is a bit ambiguous. The chancellor seems to say at one point that Darnay did not waive the disclosure requirements of the UCCJA and that her oral consentthat jurisdiction was proper in the Harrison County Chancery Court was ineffective because a party cannot confer jurisdiction.
¶ 30. Given the fact that the chancellor treated the disclosure requirements as jurisdictional, a finding that Darnay did not waive them, coupled with the fact that jurisdiction cannot be waived, would mean that the court never acquired jurisdiction. However, at another point, the chancery court said that it was declining to exercise further jurisdiction. Perhaps all the court meant is that it was ceasing to assume jurisdiction which it belatedly concluded it never had.
¶ 31. We next observe that the statutory scheme permits the chancery court to decline to exercise jurisdiction "at any time before making a decree." In our case, the chancery court not only assumed jurisdiction but issued several orders. In fact the chancery court assumed jurisdiction, which we have found to be proper, in September 2000 and did not relinquish it until October 2001, issuing several orders in the interim. Further, as part of its reasoning for relinquishing, as opposed to declining jurisdiction, the chancery court found that the children were living in Louisiana. However, we point out that the girls were in Louisiana only because the chancery court, when it admittedly had jurisdiction, changed its custody order for no apparent reason and granted custody of the girls to Darnay. In other words, the chancery court facilitated the very fact upon which it would later rely to justify terminating its jurisdiction.
¶ 32. In any event, based on the specific facts here, we find that the chancery court erred in relinquishing its jurisdiction and dismissing the case because we cannot discern how it was in the interest of the children that the Louisiana court assume jurisdiction after all the water that had flowed under the bridge since Darnay and the children first left Louisiana. They resided in Texas, then the girls resided in Mississippi for more than a year. Darnay twice, by sworn agreement, consented to John, a resident of Mississippi, having custody of the girls. Pursuant to one of the sworn agreements, John brought the girls to live with him in Mississippi and enrolled them in school here. The original judgment was properly enrolled in Mississippi, and Darnay consented to jurisdiction in Mississippi although her consent, on the facts of this case, was probably not necessary. In our judgment, these facts compel the conclusion that the chancery court committed reversible error in relinquishing jurisdiction and dismissing the case. Consequently, we reverse and remand for further proceedings consistent with this opinion.
¶ 33. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS REVERSED AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, *1204 THOMAS, LEE, MYERS AND CHANDLER, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.
NOTES
[1] We note that the Mississippi Supreme Court granted certiorari in Lanford on September 26, 2002, but has not yet rendered a decision. We further note that four justices voted to grant certiorari while five justices voted against granting it.