860 So.2d 325 (2003)
Sue Carol TYNES, Appellant,
v.
Ronald Price TYNES, Appellee.
No. 2002-CA-01091-COA.
Court of Appeals of Mississippi.
November 18, 2003.
*326 Glenn Louis White, Petal, attorney for appellant.
David Alan Pumford, attorney for appellee.
*327 Before KING, P.J., BRIDGES, and LEE, JJ.
BRIDGES, J., for the Court.
¶ 1. Sue and Ronald Tynes were married on November 2, 1975. Sue Tynes filed for a divorce on October 9, 2000. The parties consented to a divorce on the grounds of irreconcilable differences on January 30, 2002. On that same day, a hearing was conducted by the chancellor regarding issues of equitable distribution, alimony, and support. On May 13, 2002, the chancellor rendered an opinion to which Sue Tynes filed a motion to reconsider or for a new trial. This motion was denied and she now appeals to this Court.

STATEMENT OF THE ISSUES
I. WHETHER THE CHANCERY COURT ERRED IN FAILING TO AWARD ALIMONY TO SUE TYNES.
II. WHETHER THE CHANCERY COURT ERRED IN FAILING TO CONSIDER RONALD'S RETIREMENT AS MARITAL PROPERTY.
III. WHETHER THE CHANCERY COURT ERRED IN CONSIDERING RONALD'S PERSONAL INJURY SETTLEMENT AS NON-MARITAL PROPERTY.
IV. WHETHER THE CHANCERY COURT ERRED IN FAILING TO AWARD ATTORNEYS FEES TO SUE TYNES.

FACTS
¶ 2. Sue Carol Tynes (Sue) and Ronald Price Tynes (Ron) were married on November 2, 1975. Of their marriage, there are two children, Ronnie and Leslie. Starting in 1976, Ron began working as a trainman with Norfolk Southern Company. In 1997, Ron was severely injured on the job and lost his entire left leg as well as three fingers and became permanently disabled as a result of the accident. The next year, Ron entered into a settlement agreement with The Alabama Great Southern Railroad Company.
¶ 3. The couple separated in August 2000, and in October 2000, Sue filed for divorce, alleging fault grounds and irreconcilable differences. In January 2001, the parties filed a joint motion to dismiss the fault grounds and withdraw the pleading together with a consent to divorce on the ground of irreconcilable differences. The court entered an order dismissing the fault grounds, leaving the issues of equitable distribution, alimony, and support before the court.
¶ 4. A hearing was held on January 30, 2002, in regards to the division of property, alimony and support. The chancellor rendered his opinion on May 13, 2002. Sue then filed her motion to reconsider or for a new trial which was later denied by the court on June 5, 2002.

STANDARD OF REVIEW
¶ 5. The standard of review employed by this Court in domestic relations cases is limited by the substantial evidence/manifest error rule.
This Court may reverse a chancellor's findings of fact only when there is no substantial credible evidence in the record to justify his findings. Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard.
Jundoosing v. Jundoosing, 826 So.2d 85, 88(¶ 10) (Miss.2002) (citations omitted).

ANALYSIS

I. WHETHER THE CHANCERY COURT ERRED IN FAILING TO AWARD ALIMONY TO SUE TYNES.
¶ 6. In the area of domestic relations, the division of marital assets is governed *328 under the law as stated in Hemsley and Ferguson.[1]
First, the character of the parties' assets, marital or nonmarital, must be determined pursuant to Hemsley. The marital property is then equitably divided, employing the Ferguson factors as guidelines, in light of each parties' nonmarital property. If there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need be done.
Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1995) (citations omitted).
¶ 7. Whether to award alimony is governed under the law as stated in Armstrong. The Mississippi Supreme Court stated that "alimony awards are within the discretion of the chancellor and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion. In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993) (citations omitted). The factors to be considered by the chancellor in arriving at findings and entering judgment for alimony are as follows:
(1) The income and expenses of the parties;
(2) The health and earning capacity of the parties;
(3) The needs of each party;
(4) The obligations and assets of each party;
(5) The length of the marriage;
(6) The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
(7) The age of the parties;
(8) The standard of living of the parties, both during the marriage and at the time of the support determination;
(9) The tax consequences of the spousal support order;
(10) Fault or misconduct;
(11) Wasteful dissipation of assets by either party; or
(12) Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Armstrong, 618 So.2d at 1280, citing Hammonds v. Hammonds, 597 So.2d 653, 655 (Miss.1992).
¶ 8. In his findings of facts and conclusions of law, the chancellor conducted a thorough analysis of all of the relevant Armstrong factors in this case. Upon reviewing the detailed analysis taken by the court of the position and needs of the parties, we find that the chancellor in no way abused his discretion in finding that Sue was not entitled to an award for alimony. Therefore, we find this issue is without merit.

II. WHETHER THE CHANCERY COURT ERRED IN FAILING TO CONSIDER RONALD'S RETIREMENT AS MARITAL PROPERTY.
¶ 9. When reviewing questions of equitable distribution, this Court looks to the chancellor's application of the Ferguson factors. Ferguson, 639 So.2d at 928; see also Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1995); Hemsley v. Hemsley, *329 639 So.2d 909, 914-15 (Miss.1994). In Ferguson, the Mississippi Supreme Court held, that when "attempting to effect an equitable distribution of marital property," chancery courts should consider the following guidelines:
(1) Substantial contribution to the accumulation of property
a) direct or indirect economic contribution
b) contribution to stability and harmony of the marital relationship measured by quality, quantity of time spent on family duties and duration of marriage
c) contribution to the education, training or other accomplishment bearing on the earning power of spouse accumulating assets
(2) Degree to which each spouse has expanded, withdrawn, or otherwise disposed of marital assets and any prior distribution of assets.
(3) Market value and emotional value of assets subject to distribution.
(4) Value of assets not ordinarily absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift or by an individual spouse.
(5) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution.
(6) Extent to which property division may be utilized to eliminate periodic payments and other potential sources of friction.
(7) Needs of the parties.
(8) Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928.
¶ 10. "The chancellor is not required to address each and every factor and may consider only the factors which he finds applicable to the marital property at issue." Burnham-Steptoe v. Steptoe, 755 So.2d 1225, 1233(¶ 24) (Miss.Ct.App. 1999) (citing Weathersby v. Weathersby, 693 So.2d 1348, 1354 (Miss.1997)).
¶ 11. In his findings of fact and conclusions of law, it is clear that the chancellor divided all of the property, including marital home, acreage in Jones County, a tractor, a Cessna 170, and personal items, in accordance with the Ferguson factors and applied established case law.
¶ 12. Sue claims that the chancellor erred in failing to consider Ron's retirement income as marital property. In her brief, Sue cites cases involving mostly pension plans and funds which can be subject to distribution upon divorce. The chancellor has discretion in the equitable distribution of marital property, to divide such property after consideration of the evidence, in a manner in accordance with Arthur v. Arthur, 691 So.2d 997, 1002-03 (Miss.1997) (citing Ferguson v. Ferguson, 639 So.2d 921, 928-30 (Miss.1994) and Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994)).
¶ 13. The record reflects that Sue will become eligible for a divorced spouse annuity from the U.S.A. Railroad Retirement Board upon her reaching sixty-two years of age by virtue of her marriage to Ron. The record also reflects that Sue is a participant in the PERS state retirement system and that the chancellor declined to include this in the equitable distribution of marital property. There is also evidence that Sue cashed out an earlier state retirement plan; however, the reasons for doing *330 so were not revealed to the lower court. Since the judge did not have the benefit of this information, his findings were brief but sufficient as the same concerns his reasoning for not awarding Sue any amount from Ron's retirement benefits. Additionally, the record does not reveal when Sue may start receiving her retirement and the amount thereof, but it is apparent that the judge took this into consideration and made adequate and sufficient provisions for Sue.
¶ 14. Given the evidence presented in the record sub judice, we find that the chancellor made distribution of the marital property in accordance with Ferguson and Arthur, and the evidence presented in the case and did not abuse his discretion, was not manifestly wrong, clearly erroneous, nor applied an erroneous legal standard. With this being said, this issue is without merit.

III. WHETHER THE CHANCERY COURT ERRED IN CONSIDERING RONALD'S PERSONAL INJURY SETTLEMENT AS NON-MARITAL PROPERTY.
¶ 15. Sue alleges that the chancellor erred when he failed to consider Ron's personal injury settlement as non-marital property.
¶ 16. Stated again, a chancellor must classify marital assets in accordance with the criteria set forth in Ferguson. Ferguson, 639 So.2d at 928. In addition to the familiar Ferguson, Hemsley and Johnson criteria concerning classification of the marital estate and equitable distribution of marital assets, the Mississippi Supreme Court has set forth another standard governing personal injury proceeds obtained during the marriage. An approach, often referred to as the analytic approach, "involves an evaluation of the purpose of the compensation in the determination of the character of the award or settlement as marital or personal." Tramel v. Tramel, 740 So.2d 286, 289(¶ 12) (Miss.1999). "We [the Mississippi Supreme Court] find under our scheme of equitable distribution that the analytic approach adopted by the Supreme Courts of Georgia and North Carolina is preferable. That portion of Regan v. Regan, 507 So.2d 54 (Miss.1987), and any other case, which are contrary to our holding today are hereby expressly overruled." Tramel, 740 So.2d at 290(¶ 16).
¶ 17. The lines that a chancellor must draw, as difficult as they may be, are these:
(1) that portion of the proceeds allocable to compensation to the initially injured spouse for pain, suffering, and disfigurement should be awarded in its entirety to the injured spouse;
(2) that portion of the proceeds allocable to lost wages, lost earnings capacity, and medical and hospital expenses, to the extent those apply to the time period of the marriage, are marital assets and are to be divided according to equitable distribution principles; and
(3) that portion of the proceeds allocable to loss of consortium should be awarded in its entirety to the spouse who suffered that loss.
Tramel, 740 So.2d at 291(¶ 18).
¶ 18. Sue claims that the chancellor was in error for failing to view the award in light of whether any of it was attributable to loss of consortium. She focuses on the third prong of Tramel which states that the portion of the proceeds allocable to loss of consortium should be awarded in its entirety to the spouse who suffered that loss. However, Sue never pursued a loss of consortium claim or any other claim against the railroad; neither was she a party to Ron's settlement agreement.
¶ 19. The record indicates that Ron received $47,688 for "advances," money that *331 had been paid to him in the period from the injury date until the settlement date, and also a settlement of $800,043 for his personal injuries, i.e., for pain, suffering, and disfigurement.
¶ 20. The chancellor, in his findings, concluded that there was nothing in the evidence that showed that Ron bore any medical expenses during the time period, so the inevitable conclusion must be that with the $47,000 plus so paid he was substantially overpaid for his "lost wages, lost earnings capacity." The chancellor then allocated that item of the settlement payment as a marital asset, but by doing so required no apportionment thereof to Sue, for it was received and utilized as family income to the benefit of all family members who were living as a family unit until the final separation, which took place in August 2000, some twenty-six months after the settlement with the railroad company. The record does not reflect whether there was anything left of the $47,000 plus, but we can only assume that all of it was spent by the family during those twenty-six months. As for the cash payment to Ron at the settlement of $800,043 for his personal injuries, the chancellor found that this net settlement was a non-marital asset.
¶ 21. In reviewing the above facts, we find that the chancellor was not in error in finding that the remainder of Ron's personal injury settlement proceeds were allocable to compensate him for pain, suffering, and disfigurement and were, therefore, outside of the marital estate and could not be subject to equitable distribution.

IV. WHETHER THE CHANCERY COURT ERRED IN FAILING TO AWARD ATTORNEY'S FEES TO SUE TYNES.
¶ 22. Sue claims the trial judge erred in not granting her attorney's fees.
An award of attorney's fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards. The award of court costs is likewise entrusted to the sound discretion of the chancellor. The Mississippi Supreme Court has held that when a party is able to pay attorney's fees, an award of attorney's fees is not appropriate. However, where the record shows an inability to pay and a disparity in relative financial positions of the parties, there is no error in awarding attorney's fees. The supreme court has also held that consideration of the relative worth of the parties, standing alone, is insufficient. The record must reflect the requesting spouse's inability to pay his or her own attorney's fees.
Bates v. Bates, 755 So.2d 478, 482(¶ 11) (Miss.Ct.App.1999) (citations omitted).
¶ 23. In McKee v. McKee, the Mississippi Supreme Court established the criteria to be analyzed in determining whether to award attorney's fees. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). The fee depends on "consideration of, in addition to the financial ability of the parties, the skill and standing of the attorney employed, the nature of the case, and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case." Id. at 767.
¶ 24. In her appeal, Sue claims the chancellor's failure to award attorney's fees to her was error. In her brief, Sue stated that "at one time, she had $9,000 or $10,000 in certificates of deposit from an inheritance, but by the time of the trial, *332 this had all been used in living expenses." However, this statement is unsupported by the record. The record reflects by Sue's own testimony, that the amount of money she had in certificates of deposits was $19,000 and when questioned on direct examination whether any of these funds were left, Sue stated, "I think there's probably $5,000 or $6,000 left." The record also reflects that Sue makes a monthly income of $1,253 from her job with the school system.
¶ 25. We note that the chancellor did not review those factors described in McKee, in his opinion, simply opting to state his conclusion that "Sue had not met the burden of persuasive showing of her inability to pay her attorney's fees and accordingly such award is denied." Nonetheless, where this general statement may be found insufficient in other cases, we review the remainder of his opinion to find that there was ample evidence to make his conclusion that Sue was able to pay her attorney's fees. We find such cumulative evaluation to be sufficient to support his finding, and we will not disturb it.
¶ 26. THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] Hemsley v. Hemsley, 639 So.2d 909 (Miss. 1994) and Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994).