MYERS, P.J.,
for the Court.
¶ 1. Tracey Holliday seeks review of the order of the Lowndes County Chancery Court denying her motion for supervised or restricted visitation. Holliday also challenges the chancellor’s determination of the amount due for child support. Holli-day argues the chancellor erred in crediting Christopher Thurman Stockman for the time the child lived with Stockman and crediting him for three past payments to the mother. Holliday argues that these credits are erroneous, reasoning that Stockman presented insufficient proof of past payments of child support. Additionally, Holliday challenges the chancellor’s grant of equitable relief since Stockman owed past due child support. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Tracey Holliday and Christopher Thurman Stockman are the parents of a minor child, C.M.S., who was conceived out of wedlock. On January 24, 2001, a final decree awarding custody of C.M.S. was entered granting custody to Holliday. The decree also ordered Stockman to pay child support totaling $249 per month, along with setting visitation for Stockman. On November 17, 2003, Holliday received a modified support order directing Stockman to pay an additional $105 per month for insurance, and ordered Stockman to pay half of daycare expenses and half of any extracurricular expenses. The decree further set medical arrears at $209.89, child support arrears at $747, and awarded Hol-liday $732 in court costs.
¶ 3. Holliday filed action on January 18, 2006, seeking to have Stockman held in contempt. Stockman answered the action and attached a stipulated agreement he signed with the Mississippi Department of Human Services (DHS) on March 14, 2006. A hearing was held on April 5, 2006, where Holliday asked the court to award her past due child support and insurance payments, to find Stockman in contempt of court and to either require supervised visitation for Stockman or require him to complete additional anger management courses.
¶ 4. At the hearing, Stockman admitted having a gun in his glove box on December 12, 2005, when he went to pick the child up for visitation. Stockman further admitted he was previously charged with second offense domestic assault on Holliday. The circuit court in that case withheld adjudication pending Stockman’s successful completion of anger management. Stockman completed a court-ordered anger management class on December 15, 2005. In the chancellor’s opinion, in the case sub judice she found Holliday failed to prove a need *138 for Stockman to be restricted to supervised visitation. The chancellor further determined Stockman did not need to complete another anger management course, since he successfully completed a course on December 15, 2005. The chancellor further found from credible testimony that Holliday and the child moved into Stock-man’s home from September 2004 to June 2005. During that time, Holliday asked that the Department of Human Services close her case against Stockman for his child support obligations. Holliday did not reopen her case with DHS until September 19, 2005, when she moved out of Stock-man’s home. The chancellor also declined to find Stockman in contempt since he worked to resolve the child support issue with DHS and made a good faith lump sum payment of $1,246 in furtherance of the stipulated agreement between himself and DHS. The chancellor also ruled that Stockman had additionally contributed a total of $1,600 in child support payments to Holliday.
¶ 5. On July 31, 2006, the chancellor found the following, relevant to the current appeal: visitation exchanges were to occur at the Lowndes County Sheriffs Office, the Court’s prior visitation order was continued with Stockman receiving an additional three consecutive weeks, Stockman was not required to participate in additional anger management classes, Holliday was awarded $1,387 in past-due child support with interest, and Holliday was additionally awarded $2,625 with interest for unpaid medical insurance and $500 in attorneys’ fees. Holliday appeals the chancellor’s ruling with regard to the amount of arrearage of child support and the requested restrictions on visitation.
STANDARD OF REVIEW
¶ 6. Our scope of review in domestic relations matters is limited and as such this Court shall not disturb a chancellor’s findings unless the findings are deemed manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard. New v. Comola, 881 So.2d 369, 372(¶ 8) (Miss.Ct.App.2004) (citing Tynes v. Tynes, 860 So.2d 325, 327(¶ 5) (Miss.Ct. App.2003)). Further, a chancellor’s decision with regard to visitation is afforded great deference by this Court. Horn v. Horn, 909 So.2d 1151, 1163(¶ 38) (Miss.Ct. App.2005) (citing Mixon v. Mixon, 724 So.2d 956, 961(¶ 14) (Miss.Ct.App.1998)).
I. WHETHER THE CHANCELLOR ERRED IN DETERMINING THE AMOUNT OF ARREARAGE DUE TO HOLLIDAY
¶ 7. Holliday argues that she did not live with Stockman but maintained a separate home and as such, Stockman should not be given credit for the time she and the child stayed in his home. Courts have noted “the injustice of allowing the mother to continue to receive child support payments for a child who ... lived with the child’s father.” Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989) (citing Alexander v. Alexander, 494 So.2d 365 (Miss. 1986)). In the current case, the chancellor found both the mother and child lived with Stockman from September 2004 until June 2005. During this time, Stockman provided shelter for both mother and child, as well as basic necessities, which were contemplated by the child support order.
[A] father may receive credit for having paid child support where, in fact, he paid the support directly to or for the benefit of the child, where to hold otherwise would unjustly enrich the mother. Alexander v. Alexander, 494 So.2d 365 (Miss.1986). This principle applies, however, only where the father proves by a preponderance of the evidence that he has, in fact, paid the support to the child under circumstances where the *139 support money was used for the child for the purposes contemplated by the support order, that is, to provide shelter, food, clothing, and other necessities for the child. Nichols v. Tedder, 547 So.2d 766, 769 (Miss.1989).
Crow v. Crow, 622 So.2d 1226, 1231 (Miss. 1993). Stockman presented evidence to the court consisting of corroborating testimony from his former roommate with regard to whether the child and Holliday resided there during the period in question. The chancellor found from credible evidence presented at trial that Holliday and the child did in fact live with Stock-man. Therefore, we find that the chancellor properly granted credit for the period in question.
¶ 8. The case at bar is similar in facts to Alexander v. Alexander 494 So.2d 365 (Miss.1986), cited by Holliday in support of her argument. In Alexander, the parents of the minor child modified the custody arrangement without filing a petition with the court. Id. at 367. The child began living with his father, the non-custodial parent, and the father provided support for the child. Id. The father in Alexander additionally continued to pay the court-ordered child support to the minor child. Id. The fact the father made the payments to the child was only one of many factors the court considered when making its determination. The court in Alexander noted, “[the father] had the child in his custody, was supporting the child, and furthermore, was paying the child the $200 a month child support.” Id. at 368.
¶ 9. In the case at bar, the chancellor found that Stockman provided for the child while he lived in his home. Additionally, the chancellor determined that Holliday voluntarily stopped seeking child support for the months she and the child lived with Stockman. Holliday herself admits she requested DHS to discontinue pursuing support for the child on her behalf. Stockman claimed Holliday closed the DHS case on the condition that Stockman instead help Holliday support the child while they lived together. The chancellor gave credit to him as a result of this arrangement, for the time all three parties lived in the same home. The chancellor made this ruling after considering evidence submitted by Stockman and by corroborating testimony of witnesses presented by Stockman. The chancellor heard extensive testimony from both Stockman and Holliday and also heard testimony from credible witnesses in order to make her determination. As such, this Court affords great deference for the findings of the chancellor which we uphold.
¶ 10. Holliday argues that “once child support payments become past due they become vested and cannot be modified.” Thurman v. Thurman, 559 So.2d 1014, 1016 (Miss.1990). In Thurman, the father was behind on three months of child support and admitted paying only part of the full amount due. The father asked for modification of child support because of a material change in circumstances. Id. The chancellor first reduced the amount of child support the father was required to pay each month. Id. The chancellor further lessened the amount in arrears, recognizing the new lesser support order as the only required amount to be paid. The supreme court found the chancellor’s reduction of past-due support to be manifestly erroneous. Id. The case before us differs from Thurman. In our case, the chancellor did not forgive the past-due amount of support owed to the child, but instead gave credit to Stockman for money already spent in fulfillment of his child support obligation.
¶ 11. Holliday asks this court to review whether the chancellor erred in granting *140 Stockman credit for support paid and time the child lived in his home under a clear and convincing evidence standard. However, “this Court will not disturb a chancellor’s findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard.” New v. Comola, 881 So.2d 369, 372(¶ 8) (Miss. Ct.App.2004) (citing Tynes v. Tynes, 860 So.2d 325, 327(¶ 5) (Miss.Ct.App.2003)). As such, we cannot find that the chancellor was manifestly erroneous in crediting Stockman for payments already made to the child and for time the child lived in his home.
¶ 12. Here, Holliday further argues on appeal that Stockman should not be credited for the time the child lived with Stockman or for the payments she received from him because he had “unclean hands.” However, the chancellor found that Stockman’s actions did not rise to the level of unconscionable behavior, since he made a good-faith payment of $1,246 in furtherance of a stipulated agreement executed to settle the dispute with the DHS. Stockman also further admitted he had not paid the full amount of support due.
Courts apply the maxim requiring “clean hands” only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiffs misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.
Pierce v. Heritage Props., 688 So.2d 1385, 1391 (Miss.1997) (citing Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933)). The chancellor did not err when she determined that Stockman had made a good-faith effort to settle the matter of past-due child support. Finding no error, we accordingly affirm the order of the chancery court.
II. WHETHER THE COURT ERRED IN NOT REQUIRING SUPERVISED VISITATION OR ANGER MANAGEMENT CLASSES
¶ 13. The 2003 Mississippi Laws chapter 475, section one amendment to Mississippi Code Annotated 93-5-24 added (9), which set standards for custody decisions where family violence is present. The relevant portion on which Holliday relies reads:
(d) (I) A court may award visitation by a parent who committed domestic or family violence only if the court finds that adequate provision for the safety of the child and the parent who is a victim of domestic or family violence can be made.
(ii) In a visitation order, a court may take any of the following actions:
1. Order an exchange of the child to occur in a protected setting;
2. Order visitation supervised in a manner to be determined by the court;
3. Order the perpetrator of domestic or family violence to attend and complete to the satisfaction of the court a program of intervention for perpetrators or other designated counseling as a condition of visitation;
4. Order the perpetrator of domestic or family violence to abstain from possession or consumption of alcohol or controlled substances during the visitation and for twenty-four (24) hours preceding the visitation;
*141 5. Order the perpetrator of domestic or family violence to pay a fee to defray the cost of supervised visitation;
6. Prohibit overnight visitation;
7. Require a bond from the perpetrator of domestic or family violence for the return and safety of the child; or
8. Impose any other condition that is deemed necessary to provide for the safety of the child, the victim of family or domestic violence, or other family or household member.
(iii) Whether or not visitation is allowed, the court may order the address of the child or the victim of family or domestic violence to be kept confidential.
(e) The court may refer but shall not order an adult who is a victim of family or domestic violence to attend counseling relating to the victim’s status or behavior as a victim, individually or with the perpetrator of domestic or family violence, as a condition of receiving custody of a child or as a condition of visitation.
(f) If a court allows a family or household member to supervise visitation, the court shall establish conditions to be followed during visitation.
Miss.Code Ann. § 93-5-24 (Rev.2004).
¶ 14. The chancellor noted in her opinion that both Stockman and Holliday knew, according to trial testimony, “how to push each other’s buttons.” The chancellor further opined that both parties were equally responsible for failing to control their anger and for failing to communicate in a productive manner. The language in the statute allows a chancellor discretion in determining appropriate precautions and we find the chancellor instituted sufficient protective measures. The chancellor put into place appropriate precautions requiring that visitation exchanges take place at the Lowndes County Sheriffs Department to prevent future outbursts. The chancellor also declined to order Stockman to complete an anger management class, citing his recent successful completion of an anger management course. Looking at the record before us, this Court cannot say that the chancellor abused her discretion in failing to restrict Stockman to supervised visitation with the child.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF LOWNDES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.