755 So.2d 478 (1999)
Kathy Lynn BATES, Appellant,
v.
William Charles BATES, Appellee.
No. 97-CA-01631 COA.
Court of Appeals of Mississippi.
March 23, 1999.
*479 William B. Jacob, Daniel P. Self, Jr., Meridian, Attorneys for Appellant.
Jeremy B. Chalmers, James M. Mars, Philadelphia, Attorneys for Appellee.
EN BANC

ON MOTION FOR REHEARING
BRIDGES, C.J., for the Court:
¶ 1. This matter is before this Court on Kathy Bates's motion for rehearing. The motion for rehearing is granted and the original opinion dated November 24, 1998, is withdrawn, and this opinion is substituted in its place.
¶ 2. After ten years of marriage, Kathy and William (Bill) Bates agreed to a divorce on the ground of irreconcilable differences. In July 1997, the trial continued to determine the division of assets, the issue of alimony, attorney's fees and costs, and any other issues existing between Kathy and Bill. Aggrieved by certain aspects of the chancellor's ruling, Kathy appeals on the following grounds:
1) the chancellor failed to determine the extent, corresponding value, and division of the marital property per the Ferguson guidelines; and 2) the chancellor abused his discretion in failing to grant the appellant attorney's fees and costs. Finding merit to issue two, we affirm in part and reverse and remand in part.

FACTS
¶ 3. Kathy and Bill Bates were married on April 4, 1987, and had one son, eight years old at the time of the divorce. Kathy brought into the marriage a 1982 Pontiac Sunbird, two bedroom suites, and *480 some miscellaneous items. Bill brought into the marriage twenty horses, a 1981 Ford truck, and $25,000 in cash. Kathy was incorporated into Bill's operations of Bates Distributing Company as an employee. She testified that she traveled with Bill on sales trips, entertained customers in their home, as well as taking on the duties of homemaker. Kathy stated that during their marriage she and Bill accumulated significant amounts of real and personal property, obtained individual retirement accounts, acquired a life insurance policy worth $50,000, sold approximately $15,630 in cattle, and that neither had any debts on any of their property.
¶ 4. The parties separated on or about July 18, 1996, and Kathy filed her complaint for divorce on September 18, 1996. Bill answered the complaint denying the substance of Kathy's claim, but he did not file a counterclaim for divorce. The court entered an order of temporary relief on December 12, 1996, which granted Kathy temporary primary physical custody of the minor child, temporary child support, and temporary alimony. After the trial had begun, Kathy and Bill entered their consent to divorce on irreconcilable differences, leaving the issues of alimony, marital assets and property division, attorney's fees and costs, and all other remaining issues to be determined by the court. The chancellor entered his detailed findings on September 2, 1997, and stated that Kathy's contribution to Bates Corporation should be approximately 40% of the stock that the parties acquired during the marriage. The chancellor stated that the present value of the corporation was $300,000. He held that since Kathy would have trouble converting her ownership into cash, Bill should be required to buy her share in the corporation for a discount. The chancellor found that Kathy was entitled to the following equitable division of the marital assets: full ownership in the home of the parties ($70,000); title to the Chrysler automobile ($20,000); and an IRA in the Bank of Philadelphia ($15,491). The chancellor awarded no alimony, but stated that Kathy was entitled to monthly installment payments of $1,000 per month of her equitable interest in the marital property. Furthermore, the chancellor found that Kathy was not entitled to attorney's fees and that the court costs should be assessed equally.
¶ 5. Aggrieved by the chancellor's findings, Kathy filed a motion to amend the findings of fact on September 12, 1997. On September 23, 1997, the chancellor entered his judgment of divorce and entered his amended opinion on November 3, 1997, which made the following corrections and modifications: 1) the grounds for the parties divorce was changed from habitual cruel and inhuman treatment to irreconcilable differences; 2) Bill's ownership in the corporation was changed from 70% to 55%; 3) the value in the property in Attala County was changed from $31,500 to $89,000; and 4) the decision for court costs to be split equally was changed, and Kathy was held solely responsible for paying the expenses of the appraisals. A final order concerning the division of property was entered on November 21, 1997. Kathy now has perfected this appeal.

ARGUMENT AND DISCUSSION OF LAW

I. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR IN FAILING TO DIVIDE THE MARITAL PROPERTY ACCORDING TO THE FERGUSON GUIDELINES.
¶ 6. Our scope of review in domestic relations matters is limited. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Denson v. George, 642 So.2d 909, 913 (Miss.1994). This is particularly true "in the areas of divorce and child support." Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989). This Court is not called upon or permitted to substitute its *481 collective judgment for that of the chancellor. Richardson v. Riley, 355 So.2d 667, 668-69 (Miss.1978). A conclusion that we might have decided the case differently, standing alone, is not a basis to disturb the result. Id.
¶ 7. The chancery court's authority to divide marital assets is born from principles of fairness which are rooted in the court's inherent powers of equity. Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss. 1994). A chancellor is empowered to address realty assets and to divest title, including that of the marital home. Id. Concerning equitable division of assets at divorce, the Mississippi Supreme Court has stated:
It is well-established by this Court that the chancery court has the authority to order an equitable division of property that was accumulated through the joint efforts and contributions of the parties. However, there is no automatic right to an equal division of jointly-accumulated property, but rather, the division is left to the discretion of the court.... This Court, therefore, holds that the chancery court is within its authority and power to equitably divide marital assets at divorce.
Id. (citations omitted).
¶ 8. In Ferguson, the supreme court promulgated a list of guidelines to assist chancellors in the division of marital property. The Court held:
[T]his Court directs the chancery courts to evaluate the division of marital assets by the following guidelines and to support their decisions with findings of fact and conclusions of law for purposes of appellate review. Although this listing is not exclusive, this Court suggests the chancery courts consider the following guidelines, where applicable, when attempting to effect an equitable division of marital property:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Id. at 928 (emphasis added). The supreme court has explained that, "[t]o aid appellate review, findings of fact by the chancellor, together with the legal conclusions drawn from those findings, are required." Id. at 929.
*482 ¶ 9. After careful review of the record, it is apparent in the case sub judice that the chancellor reviewed all the evidence and kept in mind the financial and familial contributions of both parties when considering the distribution of property. Furthermore, the chancellor's opinion made detailed specific findings in his equitable division of the marital assets.[1] The principal assets distributed to Kathy included the marital home, the Chrysler automobile, the IRA titled in her name, and the sum of $42,328.00 from and against Bill to be paid to Kathy at the rate of $1,000 per month in lieu of her conveying all rights, title, and interest in the stock of the Bates Distribution Corporation, Inc. The principal assets distributed to Bill included the 43 acres of land located in Neshoba County; one-half interest of the land located in Attala County; title to the cattle accumulated during the marriage; the J.C. Bradford IRA, bank accounts, IRA, and Jeep titled in his name; one-half interest in the farm equipment and metal building; and title in Bates Distributing Company, Inc.
¶ 10. Kathy contends that the chancellor failed to correctly evaluate and divide the marital property. However, according to Ferguson, it was in the chancellor's discretion to determine the values to be placed on the marital assets. See Ferguson, 639 So.2d at 928. It is this Court's opinion that the chancellor adequately followed the Ferguson guidelines in his analysis and division of the marital property. In addition, Kathy argues that Bill received a greater share of the parties' marital assets. Considering the fact that Bill, at the inception of the marriage, had a substantially bigger separate estate than Kathy, and considering the other aspects under the judgment, we cannot say that this division was so inequitable as to constitute a manifest abuse of discretion ("All property division ... and mutual obligations for child support should be considered together." Ferguson, 639 So.2d at 929). This issue is without merit

II. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION IN FAILING TO AWARD THE APPELLANT ATTORNEY'S FEES AND COSTS.
¶ 11. "The award of attorney's fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards." Creekmore v. Creekmore, 651 So.2d 513, 520 (Miss.1995). The award of court costs is likewise entrusted to the sound discretion of the chancellor. Martin v. Martin, 566 So.2d 704, 707 (Miss.1990). The Mississippi Supreme Court has held that when a party is able to pay attorney's fees, an award of attorney's fees is not appropriate. Id. However, where the record shows an inability to pay and a disparity in the relative financial positions of the parties, there is no error in awarding attorney's fees. Hammett v. Woods, 602 So.2d 825, 830 (Miss.1992). The supreme court has also held that consideration of the relative worth of the parties, standing alone, is insufficient. The record must reflect the requesting spouse's inability to pay his or her own attorney's fees. Benson v. Benson, 608 So.2d 709, 712 (Miss.1992).
¶ 12. Kathy contends that she made the required showing for an award of attorney's fees and costs to be deemed proper. She claims that through evidence and by way of her testimony at trial, there was ample proof that she had insufficient available resources to pay those expenses herself. Kathy testified that her income was $755.66 per month, her expenses were $882.40, and her attorney's fees were $11,548.65, *483 including $2,243 that was used to pay for the appraisals. Furthermore, Kathy testified that she borrowed $10,000 to pay for her attorney's fees and the appraisals.
¶ 13. After careful review of the record, it is this Court's finding that since the value of the property in question was a contested issue, and whereas the trial court in its amended opinion used the value of Kathy's appraisals to determine the value of the property, Kathy is entitled to the costs as related to those appraisals. Furthermore, this Court finds that Kathy should, at the very least, be reimbursed by Bill for those attorney's fees associated with the issues upon which she prevailed. Accordingly, this issue is reversed and remanded to the trial court for a determination consistent with this opinion.
¶ 14. THE JUDGMENT OF THE NESHOBA COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, AND THOMAS, JJ., CONCUR. PAYNE, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
IRVING AND LEE, JJ., NOT PARTICIPATING.
NOTES
[1] Although the chancellor failed to make any conclusions of law, it is this Court's opinion that he adequately considered the Ferguson factors in making an equitable distribution of the marital property, and that his specific findings of fact were sufficient for us to determine that there was no abuse of discretion. However, for future reference, we encourage chancellors in making their specific findings to include the appropriate conclusions of law as required by case law. See Ferguson, 639 So.2d at 929.