# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-00296-SCT

*DANNY L. HOLLEY*

*v.*

*WANDA S. HOLLEY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 2/15/2002 |
| TRIAL JUDGE: | HON. JAMES S. GORE |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MARK G. WILLIAMSON |
| ATTORNEY FOR APPELLEE: | JOHN W. CROWELL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART, AND THE JUDGMENT OF THE CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART - 09/16/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     The Lowndes County Chancery Court granted Wanda S. Holley a divorce from Danny L. Holley on the ground of uncondoned adultery. The chancellor ordered Danny to pay $2,000 per month in periodic alimony (for a period of 60 months) and $400 per child per month as child support. Danny Holley appealed, and the Court of Appeals affirmed the child support award and reversed and rendered the order of alimony, finding that the chancellor's award of such was manifest error. ***Holley v. Holley***, 2003 WL

2196482 (Miss. Ct. App. 2003). Wanda filed a petition for writ of certiorari and asserted that the Court of Appeals improperly substituted its opinion for that of the chancellor. We granted the petition for certiorari and now reverse the Court of Appeals' decision and the chancellor's judgment on alimony and remand this case to the Lowndes County Chancery Court for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

¶2.     Wanda and Danny Holley were married for nineteen years and have three children, aged (at the time of the divorce) 17, 15, and 12. Danny is a stock broker, and Wanda is a partner in an accounting firm. As mentioned previously, divorce was granted on the grounds of Danny's uncondoned adulterous affair. The chancellor awarded Wanda custody of their three children, which was uncontested by Danny. Just prior to the divorce, Danny was in treatment for alcohol abuse, which, according to him, imposed a noticeable burden upon his earnings in the months immediately before the divorce.

¶3.     The chancellor found that Danny's gross earnings for 2001 were $136,010.69, and for the past six years were $147,788. His total monthly expenses were $3,565. The chancellor also found that Wanda's gross monthly earnings were $6,112, her total monthly living expenses were $4,176, and the children's monthly expenses were $4,183. The chancellor further determined that the net value of the marital assets was $806,684 and apportioned those assets accordingly. The chancellor awarded Wanda $525,523 which is inclusive of the $315,000 marital home, and $382,238 to Danny, which includes Danny's 401 (k) plan that amounts to $317,000.

¶4.     In the judgment of divorce, the chancellor noted:

> Factors to be considered in the determination of alimony are set forth in *Armstrong v. Armstrong*, 618 So.2d 1278 (Miss. 1993) and *Hemsley v. Hemsley*, 639 So. 2d 909 (Miss.1994). The Court finds that Wanda is entitled to periodic alimony

2

while she is adjusting to a new life of financial independence and providing care for the children. Accordingly, she is awarded periodic alimony of $2,000 per month for a period of sixty (60) months beginning on the first day of March 2002, and continuing on the first day of the next fifty-nine (59) months thereafter. This alimony obligation shall terminate upon Wanda's remarriage or the death of either party.

¶5. The Court of Appeals, in a unanimous decision, stated that the chancellor failed to provide a clear analysis of the factors which he relied upon to determine the appropriateness of alimony and held:

> When the entirety of the record is carefully reviewed, the evidence is inconsistent with an award of alimony. The chancellor's decision to award alimony was therefore manifest error, accordingly, we reverse and render the award of alimony.

*Holley*, 2003 WL 2196482, at *3. Wanda Holley asserts that the Court of Appeals erred because, as the authorities mandate, the test is not whether the evidence is "inconsistent" with an alimony award but whether "...there is any substantial credible evidence..." to support the findings of a chancellor who had a chance to hear and evaluate the credibility of the parties.

## ANALYSIS

¶6. This Court's standard of review defers much to the chancellor's final judgment. As a reviewing court, we are not to merely substitute our own judgment for that of the chancellor's. We may reverse the chancellor's findings only if we find that they are manifestly wrong or clearly erroneous when examining the record before us. *Sanderson v. Sanderson*, 824 So. 2d 623, 626 (Miss. 2002). However, our ultimate goal in divorce is to do equity. *Ferguson v. Ferguson*, 639 So. 2d 921, 934 (Miss. 1994). This Court has held that "[a]limony is considered only after the marital property has been equitably divided and the chancellor determines one spouse has suffered a deficit." *Lauro v. Lauro,* 847 So. 2d 843, 848 (Miss. 2003). In *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss.1993), this Court set out the 12 factors that must be considered by the chancellor in arriving at findings and entering judgment for alimony. These factors are:

3

(1)     the income and expenses of the parties;

(2)     the health and earning capacity of the parties;

(3)     the needs of each party;

(4)     the obligations and assets of each party;

(5)     the length of the marriage;

(6)     the presence and absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide child care;

(7)     the age of the parties;

(8)     the standard of living of the parties, both during the marriage and at the time of the support determination;

(9)     the tax consequences of the spousal support order;

(10)    any fault or misconduct;

(11)    wasteful dissipation of the assets by either party;

(12)    or any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

¶7.     In reversing and rendering the alimony award, the Court of Appeals' emphasized that Danny's monthly earnings (including his broker's bonuses) had substantially declined in the eight months following his return from the rehabilitation center.  The Court of Appeals also stressed that Wanda's position as a partner in an accounting firm, and her gross monthly income of $6,112 indicated that she was, in fact, able to maintain her standard of living.  The Court of Appeals noted that the purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new life. *Tilley v. Tilley*, 610 So. 2d 348, 354 (Miss. 1992).  This Court concludes that the chancellor

properly made that distinction and, in fact, used that very language in the judgment. Therefore, the alimony, although incorrect as to its *specific type*, was awarded for its proper *purpose*.

¶8. Therefore, in order to determine whether equity has been done in this case, we look to Danny's financial ability to make the alimony payments alone, since neither custody nor the distribution of the marital assets are contested. Wanda asserts that her monthly expenses are $8359. Danny contends that from 2000 to 2001, he had a 40 percent drop in his production as a broker and financial consultant. He attributes it to the downturn of the stock market that began in 2000. He states that his broker's bonus as well as his manager's bonus, which were previously figured into his income of the past years, will not be forthcoming the year in question because of his loss in production. He averages his gross monthly income as $4861.40, with an adjusted gross income of $3,111. He asserts that, presently, he is not earning enough to make the ordered child-support payments, the alimony payment, or even satisfy his own living expenses.

¶9. Wanda emphatically disputes this and notes that at no time within the past 14 years has Danny ever made as little as he projected in the year just prior to the divorce proceedings. Furthermore, Wanda points out that Danny's most recent earnings assessments were made in the months during which he was undergoing treatment for alcohol abuse. Due to the fact that Danny's earnings are based on commissions, it is logical that his earnings would be lower in a period of time that he was unable to work. Wanda further argues that the actual earning statement, issued by Danny's employer just prior to trial on November 27, 2001, showed regular earnings (not including bonuses) amounting to $89,319 for the preceding 9 months. Based on these figures, Wanda asserts that after taxes, alimony and child support, Danny's net monthly earnings are $3,360. Wanda also contends that in the distribution of the marital assets, she only received $91,501 in liquidated assets and has $101,780 in debt (the balance of the mortgage on the house and credit

5

card debt incurred after their separation). According to Wanda's calculations, Danny received roughly $46,744 in liquidated assets and had no substantial debt. The point of dispute between the parties is whether Danny's most recent earning history indicates a true decrease from his past six-year earning history.

¶10. This Court finds that the chancellor went to great lengths to state his findings with regard to equitable distribution of the marital assets pursuant to *Ferguson* and did so in appropriate detail. However, even though the chancellor did state that *Armstrong* provided the relevant guidelines to follow for determining an alimony award, he failed to delineate his reasoning and analysis regarding the amount and type of alimony to be distributed.

¶11. This Court characterizes the alimony awarded to Wanda Holley as rehabilitative periodic alimony. Rehabilitative periodic alimony is meant not to be an equalizer between the parties, but instead, is to allowing the party with lesser financial ability to start anew without being destitute in the interim. In *Lauro v. Lauro*, 847 So. 2d 843, 849 (Miss. 2003), we described rehabilitative alimony and its purpose:

> Rehabilitative alimony is awarded to parties who have put their career on hold while taking care of the marital home. Rehabilitative alimony allows the party to get back into the working world in order to become self-sufficient. Therefore, rehabilitative alimony is not considered during equitable distribution.
>
> "Rehabilitative periodic alimony" is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim. "Periodic alimony" is for an indefinite period vesting as it comes due and modifiable. "Rehabilitative periodic alimony" is modifiable as well, but is for a fixed period of time vesting as it accrues.

¶12. Here, the record reveals that Wanda has a stable, professional position and did not put her career on hold at any time during the marriage. Arguably, rehabilitative periodic alimony was not the appropriate *type* of alimony in this case. The Court of Appeals should have remanded this case to the chancellor for

findings of fact and application of the *Armstrong* guidelines on the issue of alimony, with instructions that he examine in detail Danny's financial ability or lack thereof to pay a reasonable determined amount of alimony.

## CONCLUSION

¶13.     For these reasons, we reverse the Court of Appeals' decision and the chancellor's judgment as to alimony and remand this case to the chancery court for determination of the appropriate type and amount of alimony consistent with this opinion.  In all other respects, the judgments of the Court of Appeals and the chancery court are affirmed.

¶14.     **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART, AND THE JUDGMENT OF THE CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

**WALLER AND COBB, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR.  GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND EASLEY, JJ., NOT PARTICIPATING.**