LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. Cynthia G. Owen (Cindy) and William Shurden Owen (Shurden) were married on August 5, 1989, and were granted a divorce in the Sunflower County Chancery Court on May 23, 2007. One child, Meredith, was born of the marriage on March 16, 1995. The divorce was granted on the ground of irreconcilable differences, and the parties agreed that Cindy would be given primary custody of Meredith with reasonable visitation rights given to Shur-den. Alimony, child support, and the distribution of the marital assets were left for the chancellor to decide.
¶ 2. Aggrieved with the chancellor’s decision, Cindy now appeals, asserting the following issues: (1) the chancellor erred in the distribution of the marital assets; (2) the chancellor erred in not awarding her alimony; (3) the chancellor set the child support too low; and (4) the chancellor erred in failing to award her reasonable attorney’s fees and costs. Finding no reversible error, we affirm the chancellor’s judgment.
FACTS
¶ 3. After Shurden and Cindy were married in 1989, they moved to Drew, Mississippi where Shurden began a farming operation. Cindy assisted with the bookkeeping for the farming business and worked various jobs at healthcare facilities after Meredith was born. The couple divorced in 2007, but there is conflicting testimony as to when the parties separated. Shurden testified that the separation occurred in October 2005. Cindy testified that the separation occurred in July 2006, but she acknowledged that Shurden was away from home from October 2005 through May 2006. Thus, the chancellor concluded that the separation occurred in October 2005. At the time of trial, Cindy lived in an apartment in Ridgeland, Mississippi, and Shurden lived in the marital *388 home, which is owned by the Shurden Land Partnership. Other relevant facts concerning the marriage will be discussed in our analysis below.
STANDARD OF REVIEW
¶ 4. Our standard of review in chancery matters is well settled. This Court will not reverse a decision of a chancellor unless the chancellor’s findings were clearly erroneous, manifestly wrong, or the chancellor applied an erroneous legal standard. Pearson v. Pearson, 761 So.2d 157, 162(¶ 14) (Miss.2000). “A chancellor’s decision will be upheld if it is supported by substantial credible evidence.” Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994).
DISCUSSION
I.DISTRIBUTION OF MARITAL ASSETS
¶ 5. In making an equitable distribution of marital assets, chancellors are directed to consider the following factors as set forth in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994):
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as.follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Assets acquired or accumulated during the marriage are subject to equitable division unless they are characterized as separate property. Johnson v. Johnson, 823 So.2d 1156, 1161(¶ 11) (Miss.2002). The chancellor is not required to consider all eight Ferguson factors but “may consider only those factors he [or she] finds ‘applicable’ to the property in question.” Owen v. Owen, 798 So.2d 394, 399(¶ 13) (Miss.2001) (quoting Carrow v. Carrow, 741 So.2d 200, 202(¶ 10) (Miss.1999)).
¶ 6. The chancellor identified the following items as marital property: certain items of personal property and household items identified by the parties; eighty acres of farmland, which is encumbered by long-term debt in connection with Shur-den’s farming operation; two shares of *389 stock in a hunting-conservation league valued at approximately $90,000; a 2005 Ford F-250 vehicle worth approximately $20,000; a 2005 Ford Excursion vehicle worth $27,500 with an outstanding balance of $12,500; Cindy’s retirement account with an approximate balance of $15,000; a whole life insurance policy with a face value of $150,000 and a cash value between $6,000 and $7,000; a $1,000,000 term life insurance policy in which Cindy is the beneficiary; and $93,000 in debt. The chancellor found that the following items were non-marital property: Shurden’s interest in the Shurden Land Partnership, including the land and structures owned by the partnership; and Cindy’s collection of jewelry valued at approximately $50,000 that was given as gifts to her by Shurden.
¶7. In the division of the property, Shurden was awarded all of the assets of the Shurden Land Partnership; his individual ownership of the eighty acres of land; and the parties’ interest in several shell entities set up during the marriage for the purpose of obtaining tax subsidies: W & C Owen Partnership; Owen Planting Company Partnership; S & T Farms, Inc.; and S & H Farms, Inc. Shurden also retained ownership of the former marital home, land, and all the farming equipment. Cindy was awarded her jewelry, some furniture, $7,000 in the cash value of a life insurance policy on Shurden, and $90,000 in the form of Shurden’s liquidation of his shares of the hunting-camp stock.
¶ 8. The chancellor found that both parties contributed to the accumulation of the marital property and debt. Cindy was primarily responsible for the household and childcare duties. During the marriage, the couple accumulated $93,000 in credit card debt. Although Cindy admitted making these charges, the chancellor noted that the burden of this debt did not fall completely on Cindy because Shurden did not step in to cancel the credit cards or otherwise take control of Cindy’s spending.
¶ 9. Shurden inherited a 19.12% undivided interest in the Shurden Land Partnership when his mother passed away in 1998. The land partnership owned the marital home; a cabin in Gore Springs, Mississippi; and a house on Highway 49 in Drew, Mississippi. Both parties made improvements to the marital home. Cindy testified that her parents spent approximately $75,000 making improvements to the house on Highway 49 in anticipation of one day living in the home, but those plans dissolved when Cindy and Shurden separated. Cindy’s parents also gave Cindy approximately $36,000 for a swimming pool that was installed at the marital home.
¶ 10. The chancellor found that Shur-den’s interest in the Shurden Land Partnership was an asset that was not ordinarily subject to equitable division. However, the chancellor recognized that the land partnership, although totally encumbered by debt, had intrinsic value to Shurden because it gives him the use and benefit of the land and structures owned by it. The eighty acres awarded to Shurden are also entirely encumbered by debt and cannot be liquidated for the purposes of equitable distribution.
¶ 11. The chancellor ordered Shurden to take the proper action to sell or transfer the shares of hunting-camp stock valued at approximately $90,000 with the proceeds to be given to Cindy. If unable to liquidate the stock within six months, Shurden must make payments of $15,000 every six months for three years. Shurden is also responsible for the $93,000 in credit card debt. Shurden must also complete the payments for the vehicle that Cindy drives and pay for the insurance on the vehicle until the vehicle is paid off. Cindy must transfer her interest in the farming operations to Shurden.
*390 ¶ 12. The chancellor found that this division of marital property eliminated the need for periodic alimony and thus would reduce a source of future friction between the parties. After reviewing the facts, we agree that the chancellor’s division of the property was equitable. The division leaves Cindy with approximately $100,000 in cash or cash equivalents and no debt. While Shurden assumes all the marital debt, Shurden continues to receive his trust income and has the continued use and benefit of the assets of the Shurden Land Partnership. Having found that the chancellor’s division of property was equitable, we find that this issue is without merit.
II. ALIMONY
¶ 13. In Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), the supreme court outlined the factors a court should consider when making a general award of alimony. Those factors are as follows:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
“Whether to award alimony, and the amount to be awarded, are largely within the discretion of the chancellor.” Cherry v. Cherry, 593 So.2d 13, 19 (Miss.1991). “If there are sufficient marital assets which, when equitably divided and considered with each spouse’s nonmarital assets, will adequately provide for both parties, no more need be done.” Tynes v. Tynes, 860 So.2d 325, 328(¶ 6) (Miss.Ct.App.2003) (quoting Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994)).
¶ 14. At the time of trial, Cindy was forty-two years old, and Shurden was forty years old. Both parties are in relatively good health. The couple was married for approximately eighteen years. Cindy has a nursing degree and a radiology associates degree. At the time of trial, Cindy made $28,639 a year, or $2,386 a month. She lives in an apartment, and she anticipates that her monthly expenses when she buys a house will be $6,894. This figure includes expenses that she thinks are necessary to maintain her previous standard of living. Cindy testified that she works for the State of Mississippi as a utility investigator, and she has no plans to seek other employment or to retire.
¶ 15. Shurden completed some college, but he does not have a college degree. Shurden receives $50,000 annually from a trust. Conflicting testimony was presented regarding Shurden’s farming income. Testimony was presented on behalf of Cindy by E.A. Buckner III, a certified public accountant, that Shurden’s average adjusted gross income was $102,854. However, Buckner admitted that this figure was based on Cindy and Shurden’s joint tax returns and that Cindy’s income would *391 need to be subtracted to calculate Shur-den’s income. Buckner also admitted that losses from the farming operations were not taken into account. He also admitted that other amounts of which he was unaware when he made his calculations should have been subtracted before determining Shurden’s income, such as two erroneous trust distributions in 2001 and 2002. Louis Jackson, a certified public accountant, prepared a financial statement for Shurden for the divorce proceedings. Jackson testified that once he subtracted Cindy’s income, Shurden’s losses in the farming operation, and the two trust distributions that should not have occurred, Shurden’s average income was approximately $9,000 a year.
¶ 16. As to fault or misconduct, the chancellor found that both parties contributed to the dissolution of the marriage. Cindy admitted that she had a nine-month affair in 1997, which resulted in a fourteen-day separation. Shurden admitted that after Cindy’s affair, he also had a brief affair. Both parties testified that they reconciled after the affairs. Cindy testified that the marriage ended because of Shurden’s drinking and because he left to work on the Mississippi Gulf Coast in the fall of 2005. Shurden testified that he believed Cindy was having an affair in the summer of 2005. He testified that Cindy left the marital home and stayed elsewhere for extended periods of time. He testified that Cindy sometimes drank alcohol to excess and smoked marijuana.
¶ 17. Shurden testified that he thought that he and Cindy were living beyond their means at times during their marriage. Cindy testified that she knew Shurden was concerned with her spending habits. At the time of trial, the couple’s credit card debt totaled $93,000. Cindy testified that she made all the charges, but she did so for the family’s benefit. Cindy had several cosmetic procedures during the marriage. Cindy leased a car for personal use for $1,200 a month through the couple’s farming company, W & C Owen Partnership. Shurden spent money on hunting equipment and hunting trips out West and to South Africa.
¶ 18. The Owens kept up a fairly high standard of living during the marriage and took several vacations a year. Cindy argues that her current standard of living is much lower than Shurden’s current standard of living because she lives in an apartment without cable television, and Shurden still lives in the marital home. However, we note that while Shurden has the benefit of living in the marital home, he retains the debt associated with the residence as well as any other debt owed by the couple at the time of their divorce. Also, as to Cindy’s argument regarding her standard of living, the chancellor noted that certain expenses, such as Cindy’s $1,200 monthly car payment that she requests in the form of alimony, are “totally disproportionate to the parties’ income and that it is time for a dramatic departure from those spending habits.”
¶ 19. We find that the chancellor thoroughly considered the facts, and that her decision was supported by substantial credible evidence. Therefore, we agree that alimony is not necessary as the chancellor’s division of assets adequately provides for both parties. This issue is without merit.
III. CHILD SUPPORT
¶ 20. The chancellor awarded Cindy child support in the amount of $583.33 a month. The chancellor based this calculation on Shurden’s trust fund income of $50,000 a year. Using this amount, Shur-den’s adjusted gross monthly income is $4,166.67, and the chancellor used the statutory guideline of 14% in determining the award of $583.33. Miss.Code Ann. § 43- *392 19-101(1) (Rev.2009). The chancellor also ordered Shurden to pay for the following: a $1,000,000 life insurance policy with Cindy as the primary beneficiary; health insurance for Meredith; half of Meredith’s medical expenses; and reasonable and necessary college tuition and related expenses for Meredith.
¶ 21. Cindy argues that the chancellor’s child support award ignored any income Shurden received from his farming operation. Mississippi Code Annotated section 43 — 19—101(3)(a) (Rev.2009) states that gross income includes “all potential sources that may reasonably be expected to be available to the absent parent including, but not limited to, ... income from self[-]employment....” However, we recognize that “[i]t is within the chancellor’s discretion to award child support, and this Court will not reverse that award unless the chancellor was manifestly wrong in the findings of fact or manifestly abused his discretion.” Suber v. Suber, 936 So.2d 945, 948(¶ 6) (Miss.Ct.App.2006) (citing Chesney v. Chesney, 910 So.2d 1057, 1060(¶ 5) (Miss.2005)).
¶ 22. Witnesses presented contradictory testimony regarding Shurden’s income. The chancellor determined Jackson’s method of accounting to be more credible. According to Jackson, Shurden’s trust income minus the losses from the farming operation totaled approximately $9,000. Therefore, the chancellor determined that the best way to calculate Shurden’s income was to not include the farming operation. The chancellor stated that “while Shur-den’s adjusted gross income on average can be characterized as less than $9,000.00 per year, if Shurden quit farming today, he would be able to earn approximately $50,000.00 in trust income.” If Shurden ceased his farming operation and was not able to report a loss, he would still receive the $50,000 annually.
¶ 23. We find that the chancellor’s decision to set child support at $583.33 a month was supported by substantial credible evidence. Basing child support on Shurden’s trust income alone may not seem fair given the standard of living kept during the marriage. It is clear from the record that the family paid for personal expenses out of the farming accounts. However, regardless of whether or not we agree with the chancellor’s assessment of Shurden’s income, we find that the chancellor thoroughly reviewed the conflicting evidence and ruled accordingly. Therefore, we can find no abuse of discretion. Further, the chancellor was correct in her assessment that Shurden and Cindy were living well beyond their means and will have to make adjustments to their lifestyles. Therefore, we find that this issue is without merit.
IV. ATTORNEY’S FEES
¶ 24. At trial, Cindy offered into evidence certain attorney’s fees and other expert witness fees. Cindy’s attorney’s fees totaled $9,704 at the time of trial. Shurden did not object on the basis of authenticity, but he reserved argument on the issue of whether the fees and costs were recoverable by Cindy. The chancellor reviewed the incomes of the parties, the division of assets, and the distribution of debt to the parties and determined that an award of attorney’s fees and costs was not appropriate.
¶ 25. Regarding the award of attorney’s fees, this Court has stated as follows:
The award of attorney’s fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards. The award of court costs is likewise entrusted to the sound discretion of the chancellor. The Mississippi Supreme Court has held that when a party is able to pay attorney’s fees, an award of attorney’s fees is not *393 appropriate. However, where the record shows an inability to pay and a disparity in the relative financial positions of the parties, there is no error in awarding attorney’s fees. The supreme court has also held that consideration of the relative worth of the parties, standing alone, is insufficient. The record must reflect the requesting spouse’s inability to pay his or her own attorney’s fees.
Bates v. Bates, 755 So.2d 478, 482(¶ 11) (Miss.Ct.App.1999) (internal citations and quotation omitted).
¶ 26. Cindy argues that her monthly expenses exceed her income plus child support; thus, she asserts that she has shown an inability to pay her attorney’s fees. She also argues that there is a disparity in the relative financial positions of the parties because Shurden still owns his farming business and land and has guaranteed income from the trust. However, we note that even though Shurden’s income is higher than Cindy’s, Shurden was ordered by the chancellor to pay the marital debt of $98,000. Also, Shurden has yet to pay Cindy the $90,000 from the sale of his hunting-camp stock. Having found that the distribution of marital assets was equitable and that Cindy has not shown an inability to pay her attorney’s fees, we find that this issue is without merit.
¶ 27. THE JUDGMENT OF THE SUNFLOWER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH A SEPARATE WRITTEN OPINION.