MYERS, P.J.,
 

 for the Court:
 

 ¶ 1. Deborah Ann Meador appeals from a final judgment entered by the Jones County Chancery Court granting her a divorce from Willie W. Meador Jr. on the ground of uncondoned adultery. Deborah contends that the chancellor erred by (1)
 
 *414
 
 not considering Willie’s financial interest in “George’s Liquor Store,” (2) not awarding her rehabilitative or periodic alimony, and (3) not awarding her attorney’s fees. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 2. Deborah and Willie married in 1970. The parties separated in 2005, and in 2007, Deborah sued for divorce alleging adultery, habitual cruel and inhuman treatment, or, alternatively, irreconcilable differences. Willie cross-complained for divorce alleging habitual cruel and inhuman treatment, or, alternatively, irreconcilable differences. The case was heard in 2009, in front of Specially Appointed Chancellor Honorable Eugene Love Fair Jr. The grounds for divorce were not significantly litigated as Willie admitted at the outset of the proceedings to being in a current relationship with another woman. He also admitted to numerous affairs with other women throughout his and Deborah’s marriage. The crux of the case involved property and financial matters, and the parties presented the chancellor with lengthy testimony and numerous exhibits for his determination of the issues of (1) equitable division of property, (2) alimony, and (3) attorney’s fees and expenses.
 

 ¶ 3. In a detailed thirty-page opinion in support of his final judgment, the chancellor described a lengthy marriage that had ceased being a true marriage years ago and likely would have ended earlier had it not been for the couples’ two boys, both of whom are now adults. Willie and Deborah were found to be good parents who concentrated much of their time and effort on their boys. Willie, fifty-eight years old and in good health, has been an employee of Coca-Cola since 1970. He began his career there as a route driver, dropping out of college to work at the company full time. He has been the general manager of the company’s plant in Laurel, Mississippi, since 1990. Deborah, fifty-six years old and also in good health, has worked as a teacher and an administrator in the public school system for most of the marriage. Deborah has a masters degree from the University of Southern Mississippi, and she began working toward a doctorate degree in 2000. She currently serves in the Department of Education Legislation and Communication office in Jackson, Mississippi, and has done so since 2007, having left the Jones County School System to take that position.
 

 ¶ 4. The family’s standard of living throughout most of the marriage was above average; they took trips, belonged to clubs, participated in sports, and generally lived a comfortable lifestyle. Willie’s position at Coca-Cola required that he be actively involved with the community, particularly with groups that do business with Coca-Cola. Willie and Deborah were expected by the company to participate in social events and activities, something they both enjoyed, but participation came at a personal financial cost, which was not paid for or reimbursed by the company.
 

 ¶ 5. The couple built their “dream home” in Jones County in 1989, and over the years thereafter, they took out additional loans secured by the home. These loans were sometimes for improvements and other times to contribute to family expenses, specifically for the boys’ educations. Both boys were provided with expensive educations from private colleges, where they both excelled.
 

 ¶ 6. While undisputably a devoted father to his children, Willie was not a loyal husband to Deborah. Willie’s numerous infidelities were found to be a destructive factor on the marriage. But the chancellor also found a factor of condonation prevalent on Deborah’s part for repeatedly choosing to continue the marriage despite
 
 *415
 
 Willie’s habitual philandering. Finding that no longer to be the case with regard to Willie’s latest relationship, which the record indicates had been ongoing for some time with Deborah’s knowledge, the chancellor granted Deborah a divorce on the statutory ground of adultery.
 

 ¶ 7. The chancellor ordered all tangible personal property to be divided by the parties as agreed upon by them in open court. Under the guidelines set forth by our supreme court in
 
 Hemsley v. Hemsley,
 
 639 So.2d 909 (Miss.1994) and
 
 Ferguson v. Ferguson,
 
 639 So.2d 921 (Miss. 1994), the chancellor identified the assets and/or liabilities belonging to the parties’ marital estate and then made an equitable distribution thereof. According to the judgment, Deborah retains ownership and benefit of her annuity ($5,208), her state retirement benefits ($91,987), and her deferred compensation account with the state ($21,819), with all free of any claim by Willie. Willie retains his 401(k) ($31,-894) with his employer free of any claim by Deborah. Willie has the option to purchase from Deborah her interest in the marital home for an amount equal to one-half of the difference between the current principal balance of indebtedness ($139,-168) and the home’s appraised value ($215,000). If Willie fails to do so, the marital home is to be sold, and the proceeds of the sale divided equally between the parties. Willie also has the option to purchase Deborah’s marital interest in the undeveloped lot located next to the marital home. Otherwise, it will be sold, either jointly with the marital home or as a separate parcel, and the proceeds will be divided equally. The lot is valued at $39,000, and Deborah’s interest therein amounts to $19,500. Both parties are liable for their own short-term personal debts. Deborah listed short-term debt totaling approximately $35,000 on her Uniform Chancery Court Rule 8.05 financial form, and Willie listed short-term debt totaling approximately $26,000 on his own 8.05 form. Lastly, the chancellor ordered that ‘Willie shall remain liable for the approximately $96,000 he owes on the educational loans incurred for the benefit of the children and shall indemnify Deborah therefrom.”
 

 ¶ 8. The chancellor declined to award any type of alimony to either party after taking into consideration the factors set forth by the court in
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278 (Miss.1993) and
 
 Cheatham v. Cheatham,
 
 537 So.2d 435 (Miss.1988). And he held each party responsible for paying his and her own attorney’s fees and expenses.
 

 ¶ 9. Feeling aggrieved, Deborah appeals. Additional facts, as necessary, will be related during our discussion of the issues.
 

 STANDARD OF REVIEW
 

 ¶ 10. We review domestic-relations matters under the limited substantial-evidence/manifest-error rule.
 
 Evans v. Evans,
 
 994 So.2d 765, 768 (¶9) (Miss. 2008). A chancellor’s findings will not be disturbed on appeal when supported by credible evidence and not manifestly wrong.
 
 Newsom v. Newsom,
 
 557 So.2d 511, 514 (Miss.1990).
 

 DISCUSSION
 

 I. “George’s Liquor Store”
 

 ¶ 11. Much of the testimony and exhibits presented to the chancellor in this case pertained to the status of “George’s Liquor Store.” Deborah maintains that Willie has an ownership and/or financial interest in the liquor store, and she contends that the chancellor ignored the compelling circumstantial evidence of proof.
 

 ¶ 12. According to the evidence, John Frank Clark, a longtime friend of Willie, purchased “George’s Liquor Store” in 2007
 
 *416
 
 through his limited-liability company, JF
 
 &
 
 W, LLC. Clark, a highly successful businessman, is the largest customer of Coca-Cola products in the Mobile, Alabama, area regional unit of the Coca-Cola distribution system, and he has been an important figure in Willie’s career at Coca-Cola. Clark owns numerous businesses, which together generated an estimated gross income of five hundred million dollars in 2008. According to testimony, Willie’s relationship with Coca-Cola has been tenuous at times over the years. But that relationship became more stable when Clark ended a contract with Coca-Cola some time ago for a one-year stint with Pepsi Cola. Clark’s shift to Pepsi resulted in the firing of the Coca-Cola account representative then handling Clark’s account. Afterwards, Willie was issued an order from Coca-Cola to get Clark’s business back. Willie regained Clark’s business with Coca-Cola. Since then, one of Willie’s chief responsibilities at Coca-Cola has been to “keep Clark’s business with the company,” which requires “keeping Clark happy.”
 

 ¶ 13. Subpoenaed by Deborah, Clark testified that he purchased the liquor store from George Harrison in 2007 for approximately $500,000. Clark formed JF & W, LLC, which he said stands for “John Frank and Wife,” early in 2007, for this purpose. Clark said he owns fifty-one percent of the limited-liability company, and his wife owns the remaining forty-nine percent. He said Willie has no ownership interest in the company. Clark stated that he wanted Willie to be a partner in the liquor store investment, and the venture initially started out that way, but a partnership never happened because Willie was unable to contribute financially. Clark explained that Harrison’s asking price essentially doubled during the negotiation process, and the deal became too expensive for Willie. Once it became apparent that Willie would not be a partner, Clark did not want Harrison to know that Willie was out of the deal because he was afraid Harrison would sell the store to someone else. Clark said he did not know Harrison very well, but Willie did, and Harrison liked Willie. So Clark “kept Willie’s name on the line with [him] so [he] could get the liquor store,” which included keeping Willie’s name listed on the operating agreement for JF & W, LLC. According to the operating agreement that was submitted into evidence, Clark and his wife, Betty Davis Clark, are listed as the company’s only two members, and Willie is listed as manager. Clark stated that Willie was instrumental in the negotiation process between him and Harrison, and Willie helped him with the store after he bought it. This included writing out checks in the name of JF & W, LLC and making small purchases for the store. Clark said Willie used his own credit card on a few occasions when making purchases, and he reimbursed Willie for doing so. But he never has paid Willie any type of compensation for his help with the store. Clark said he has yet to receive any income from the liquor store. According to Clark, he paid too much for the store, and the overhead and note expense eat up all the income.
 

 ¶ 14. Willie testified he does not have an ownership interest in the liquor store and has never received any type of compensation from Clark, other than reimbursements for purchases he made for the store with his own credit card. Willie stated he wanted to be a part owner in the liquor store, but Harrison’s asking price got “way out of control.” Willie admitted that he was personally involved in negotiating the deal between Clark and Harrison, and he said that, as a favor to Clark, he remained involved with the store after Clark bought it. Willie said they did not
 
 *417
 
 let Harrison know that he would not be a part owner in the liquor store because there were others interested in purchasing the store, and according to Willie, Harrison did not like Clark. Willie also admitted that he has spent a significant amount of time at the liquor store since Clark bought it. Willie said his girlfriend, Amber, works there and he remains active in the business to the extent of signing checks, copies of which were introduced into evidence, but he does not draw any income for doing so. Willie said he helps Clark with the store because Clark is a very important customer for Coca-Cola. Willie acknowledged that Coca-Cola has a strict policy against its employees engaging in businesses that could potentially be seen as a conflict of interest with their employment at Coca-Cola. Willie indicated that .this policy had an effect on his decision not to have any ownership involvement with the liquor store.
 

 ¶ 15. In general, a spouse’s business interest is marital property if the interest was acquired through the spouse’s efforts during the marriage or purchased with marital funds.
 
 See Pittman v. Pittman,
 
 791 So.2d 857, 866-67 (¶¶ 25-29) (Miss.Ct.App.2001). If the interest is properly characterized as marital property, it is subject to an equitable distribution by the chancellor under the guidelines set forth in
 
 Ferguson,
 
 639 So.2d at 928.
 

 ¶ 16. Here, based upon the evidence presented, the chancellor found that Willie neither had any ownership interest in the liquor store nor received any income for helping Clark manage it. Therefore, neither did the marital estate.
 

 ¶ 17. Whether Willie had any ownership interest or financial interest in the liquor store, which could be said constituted a marital asset, was a question of fact for the chancellor to decide. The chancellor found that although the operating agreement for JF & W, LLC, listed Willie as a manager, it did not reflect that Willie had any ownership interest in the business. There was a financial statement executed by Willie in 2007 that referred to a possible contingent liability related to the liquor store. But according to testimony, this was done in an effort to obtain credit financing from the Bank of Jones County, which, ultimately, Willie was unable to obtain. Curiously, after Clark purchased the liquor store, Willie continued to remain actively involved, spending a lot of time there, signing checks in the name of JF & W, LLC, and making purchases at Clark’s behest. While such activity in this instance may be considered unusual, such activity does not in and of itself prove that Willie has an ownership interest or financial stake in the liquor store. Nor does it establish that he received any income from the liquor store. Willie’s bank records and those for the liquor store were submitted into evidence for the chancellor’s consideration, and neither showed that Willie received any income for his time and services at the liquor store.
 

 ¶ 18. Deborah also contends that Willie’s testimony conflicted with Clark’s testimony, and their testimonies conflicted with the exhibits. As the trier of fact, the chancellor is the judge of the credibility of the witnesses and decides the weight of their testimonies, and the chancellor interprets the evidence where it is capable of more than one reasonable interpretation.
 
 Bowen v. Bowen,
 
 982 So.2d 385, 395 (¶ 42) (Miss.2008). Based on our review of the record, we find no manifest error with the chancellor’s factual findings on this issue.
 

 ¶ 19. Deborah further asserts on appeal that Willie did not properly supplement the record with his 2008 W-2 form from Coca-Cola, as he was ordered to do by the chancellor at trial. According to the record, when the trial started on Janu
 
 *418
 
 ary 16, 2009, Willie had yet to receive his W-2 form for 2008. The chancellor instructed Willie to supplement the record with the document as soon as he received it. Willie’s record excerpts contain a copy of a letter from Willie’s attorney addressed to Deborah’s attorney with an attached copy of Willie’s 2008 W-2 from Coca-Cola. But there is no indication in the record before this Court that the W-2 form was added to the official record, although Willie claims in his brief that it was provided to the chancery court. Assuming that it was not added, Deborah should have made her concern that Willie failed to do so known to the chancery court. There is no indication that she did. Therefore, we find the matter is procedurally barred on appeal.
 

 II. Alimony
 

 ¶ 20. Deborah contends that the chancellor’s decision not to award her either periodic or rehabilitative alimony was a clear abuse of discretion. She argues that the chancellor could have easily ordered Willie, who makes approximately $8,000 a month more in income than she does, to either pay off her car note or help offset her current monthly living expenses in the amount of $1,000 or less.
 

 ¶ 21. Alimony awards are within the chancery court’s discretion; this Court will not reverse the chancellor’s decision to award or deny alimony unless we find that the chancellor abused his or her discretion in fact-finding or misapplied the law.
 
 Elliott v. Elliott,
 
 11 So.3d 784, 786 (¶ 7) (Miss.Ct.App.2009). “The purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new life.”
 
 Faerber v. Faerber,
 
 13 So.3d 853, 863 (¶ 36) (Miss.Ct.App. 2009) (quoting
 
 Holley v. Holley,
 
 892 So.2d 183, 185 (¶7) (Miss.2004)). Chancellors should consider alimony only after equitable division of the marital assets.
 
 Id.
 
 Periodic alimony is based on need, and it “should only be considered if the chancellor determines that a spouse has suffered a disparity of income and standard of living following the equitable division of marital assets.”
 
 George v. George,
 
 22 So.3d 424, 428 (¶ 6) (Miss.Ct.App.2009). Rehabilitative alimony “is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim.”
 
 Hubbard v. Hubbard,
 
 656 So.2d 124, 130 (Miss.1995).
 

 ¶ 22. When determining whether to award alimony, chancellors are instructed to take into consideration twelve factors set forth by the supreme court in
 
 Armstrong,
 
 618 So.2d at 1280. Those factors are as follows: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed by the court to be just and equitable in connection with the setting of spousal support.
 
 Id.
 
 (citations omitted).
 

 (1) Income and Expenses of the Parties
 

 ¶ 23. According to her 8.05 financial disclosure form, Deborah shows a gross monthly income of $4,139.20, which after appropriate deductions for taxes, retirement costs, and employee insurance, nets
 
 *419
 
 her $2,581.32 per month. Willie shows a monthly gross of $7,990, which the chancellor found nets him after deduction for taxes, $5,747 per month. The chancellor did not factor in Willie’s mandatory, monthly insurance payment of $197 or his mandatory, monthly retirement contribution of $175.
 

 ¶ 24. In addition to her monthly car note of $434, Deborah is paying approximately $1,836 on credit-card obligations, most of which she incurred after she moved to Jackson in 2007. Deborah pays $800 per month for housing.
 

 ¶ 25. In addition to the house note, property taxes, and insurance, totaling $1,455, Willie listed credit-card, bank-note, and school-loan monthly payments of $1,284. Willie has personally assumed the student-loan costs for his and Deborah’s two sons, which currently total $96,000.
 

 (2) Health and Earning Capacities of the Parties
 

 ¶26. Both parties are in good health. Despite the current economy, each has relatively stable employment. Deborah testified that after she and Willie separated, she took a job in Jackson, and she took a cut in pay to do so. She admitted that opportunity to advance and earn more than she currently receives is available to her. The chancellor found that Willie is earning at the peak of his ability and educational background. Willie is fifty-eight years old, and his having only $32,000 in a 401 (k), his work life, more than likely, will be significantly longer than Deborah’s. The chancellor noted that Deborah is fifty-six years old, and he stated that she may actually work longer than Willie, though not for financial reasons but rather because of a strong work ethic and love of what she does for a living.
 

 (3) Needs of Each Party
 

 ¶ 27. The chancellor found no special needs for either party. But he noted that since Willie has personal use of a company vehicle through a deduction in the amount of $40 per month from his gross earnings, Willie’s need for a vehicle is less than Deborah’s.
 

 (k) Obligations and Assets of Each Party
 

 ¶ 28. Deborah has significant short-term, high-interest debt. Willie has significant long-term low-interest debt and short-term debt. The chancellor found that the couples’ respective retirement assets, which are capable of producing income in addition to social-security benefits, are significant for Deborah and sorely lacking for Willie.
 

 (5)Length of Marriage
 

 ¶ 29. The chancellor stated that at the time of trial the parties had been married twenty-eight years. And in their respective briefs to this Court, counsel for each party repeatedly refer to a twenty-five-year marriage at the time of Willie’s and Deborah’s separation in 2005. The record, however, indicates that the parties married in 1970, shortly after Deborah graduated from high school. Based on our calculations, Willie’s and Deborah’s marriage lasted thirty-eight years.
 

 (6)Presence or Absence of Minor Children in the Home
 

 ¶ 30. Their two sons are grown, and this factor is not applicable.
 

 (7)Age of the Parties
 

 ¶ 31. Willie is fifty-eight years old; Deborah is fifty-six.
 

 (8)Standard of Living of the Parties, During the Marriage, and at the Time of Separation
 

 ¶ 32. As previously mentioned, Willie’s and Deborah’s standard of living throughout most of their marriage was above av
 
 *420
 
 erage. According to the chancellor’s findings, after the parties separated, Deborah’s living accommodations were much less than what she had been accustomed to during the marriage. After she moved to Jackson, Deborah lived in an apartment for an extended period without much furniture. The chancellor found that with their agreed division of tangible personalty and Deborah’s subsequent purchases (reflected in her short-term debt), her current lifestyle is similar to that which existed at the time before she moved out of the marital home in 2007. According to the record, Deborah and Willie had lived in separate parts of the home since 2005.
 

 (9)Tax Consequences of the Spousal Support Order
 

 ¶ 33. The chancellor noted that alimony is generally deductible by the payor.
 

 (10)Fault or Misconduct
 

 ¶ 34. The chancellor found that Willie’s admitted adultery, which entitled Deborah to a divorce, and “the cessation of marital relations and the reduction of a standard of living and freedom from humiliating behavior on the part of [Willie] warrants favor under this factor to Deborah.”
 

 (11)Wasteful Dissipation of Assets by Either Party
 

 ¶ 35. The chancellor found that this factor favored neither party.
 

 (12)Any Other Factor Deemed by the Court Just and Equitable in Connection with the Setting of Spousal Support
 

 ¶ 36. The chancellor did not find this particular
 
 Armstrong
 
 factor necessary based on his consideration of the other factors.
 

 ¶ 37. Deborah argues that the chancellor’s analysis of the
 
 Armstrong
 
 factors is not supported by the evidence. Deborah maintains that her testimony and supporting documents reveal a wife that left a longtime marriage because of her husband’s admitted adulterous affairs, with the latest affair being with a woman thirty-plus years his junior. She left with the clothes on her back, a car note, and monthly living expenses in an apartment in Jackson. She reiterates that Willie, on the other hand, makes $3,000 a month more than her, and he also has time to manage a liquor store without compensation. Deborah asserts that a review of her current income and expenses in comparison to that of Willie’s clearly shows that she was left with a deficit.
 

 ¶ 38. We find no error with the chancellor’s findings with regard to the
 
 Armstrong
 
 factors. Based on our review of the record, they are supported by substantial evidence that was adduced from the testimonies and exhibits presented. The record reveals that Deborah is a hard-working individual with impressive credentials, which she obtained over the course of the couples’ marriage, with support contributed by Willie. Deborah has her own separate income with the capacity to earn more income. She has worked in the public school system both as a teacher and as an administrator for twenty-nine and one-half years, and she has that amount of service time vested in the state’s retirement system. Willie currently earns more income than Deborah, but he is at the top of his earning capacity. Willie’s direct economic contribution to the couple’s two sons and to a good lifestyle for himself and Deborah was significant and has left him without significant assets for retirement. At Deborah’s behest, both sons were afforded the opportunity to attend private colleges. Though Deborah did not ask him do so, Willie withdrew approximately $100,000 from his retirement plan to help pay for each son’s college education. According to the chancellor, this warranted favorable
 
 *421
 
 consideration to Willie. Willie also personally assumed student-loan costs for both boys in the amount of $96,000, and the chancellor absolved Deborah from any responsibility of having to help Willie pay off the debt. As to Deborah’s credit-card debt and her car note, the chancellor addressed these factors in his
 
 Hemsley
 
 and
 
 Ferguson
 
 analyses. Based on our review of the record, she will have the funds necessary from her share of the marital assets to meet most, if not all, of these obligations.
 

 ¶39. For the aforementioned reasons, we find no merit to Deborah’s argument that she was left with a deficit following the chancellor’s equitable division of the marital estate. And we find no abuse of discretion in the chancellor’s decision not to award Deborah either periodic or rehabilitative alimony.
 

 III. Attorney’s Fees
 

 ¶ 40. Deborah offered into evidence a detailed statement of her attorney’s fees, which totaled $12,442 for hourly work and $1,154 for expenses. Deborah testified that she borrowed the funds from her mother and did not have the current ability to pay the outstanding balance. The chancellor acknowledged that the statement submitted was in compliance with the requirements set forth by
 
 McKee v.
 
 McKee, 418 So.2d 764 (Miss.1982), and he found the attorney’s fees reasonable and appropriate for the level and quality of representation Deborah received. But he found that Deborah was capable of paying her own attorney’s fees.
 

 ¶ 41. The decision whether to award attorney’s fees in divorce cases is left to the discretion of the chancellor, assuming he or she follows the proper standards.
 
 Creekmore v. Creekmore,
 
 651 So.2d 513, 520 (Miss.1995). When a party is able to pay attorney’s fees, an award of attorney’s fees is not appropriate.
 
 Martin v. Martin,
 
 566 So.2d 704, 707 (Miss.1990). But where the evidence shows an inability to pay and a disparity in the relative financial positions of the parties, “there is no error in awarding attorney’s fees.”
 
 Bates v. Bates,
 
 755 So.2d 478, 482 (¶ 11) (Miss.Ct. App.1999). “[Consideration of the relative worth of the parties, standing alone, is insufficient[;][t]he record must reflect the requesting spouse’s inability to pay his or her own attorney’s fees.”
 
 Id.
 
 (citing
 
 Benson v. Benson,
 
 608 So.2d 709, 712 (Miss. 1992)).
 

 ¶ 42. We find no abuse of discretion in the chancellor’s decision not to award Deborah attorne/s fees. The chancellor found that in light of the apportionment of the parties’ assets, Deborah has the ability to pay her own attorney’s fees. The record supports the chancellor’s findings. Accordingly, this assignment of error lacks merit.
 

 ¶ 43. THE JUDGMENT OF THE CHANCERY COURT OF JONES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.